LANE DILG (SBN 277220)
City Attorney
Lane.Dilg@smgov.net
IVAN O. CAMPBELL (SBN 216049)
Deputy City Attorney
Ivan.Campbell@smgov.net
1685 Main Street, Third Floor
Santa Monica, California 90401-3295
Tel: 310.458.8336;
Fax: 310.393.6727

DAVID M. WALSH (SBN 120761)
DWalsh@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California 90017-3543
Tel: 213.892.5200;
Fax: 213.892.5454

BRIAN L. HAZEN (SBN 309212)
BHazen@mofo.com
MORRISON & FOERSTER LLP
12531 High Bluff Drive, Suite 100
San Diego, California 92130
Tel: 858.720.5100;
Fax: 858.720.5125

*Attorneys for Defendant*
CITY OF SANTA MONICA

BARRY ROSEN
136 S. Clark Drive, #5
Los Angeles, CA 90048
Tel: 323.653.2043
Email: brlegal-csmfaa@yahoo.com

*In Pro Per*

CHAD A. READLER
Principal Deputy Assistant Attorney
General
SANDRA R. BROWN
Acting U.S. Attorney for the Central
District of California
JUDRY SUBAR
Assistant Branch Director
GARY FELDON, D.C. Bar No. 987142
Trial Attorney
UNITED STATES DEPARTMENT OF
JUSTICE
Civil Division, Federal Program Branch
200 Massachusetts Avenue NW
Washington, D.C. 20530
Tel: 202.514.4686
Fax: 202.616.8470
Email: gary.d.feldon@usdoj.gov

*Attorneys for Defendants*
UNITED STATES and FEDERAL
AVIATION ADMINISTRATION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN, Individually and as a Private Attorney General, | Case No.    2:17-cv-07727 PSG(JEMx) |
| Petitioner and Plaintiff, | STIPULATION TO AMEND PLAINTIFF'S SECOND AMENDED PETITION |
| v. | |
| UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION, AND CITY OF SANTA MONICA, | Judge:  Honorable Philip S. Gutierrez |
| Respondents and Defendants. | |

Pursuant to Local Rules 7-3 and 15-1, Plaintiff Barry Rosen ("Plaintiff"), on the one hand, and Defendants City of Santa Monica (the "City"), the United States, and the Federal Aviation Administration (the "FAA") (collectively, the "Defendants"), on the other hand, hereby stipulate as follows:

1.   This Court's Standing Order requires Plaintiff to "carefully evaluate defendant's contentions as to the deficiencies in the complaint," and states that "[i]n most instances the moving party should agree to any amendment that would cure the defect," (Standing Order ¶ 6(a));

2.   Pursuant to Local Rule 7-3 and paragraph 6(a) of this Court's Civil Standing Order, the parties engaged in the required meet and confer discussions in advance of the City's February 12, 2018 deadline to file its Rule 12 motion to dismiss the (Verified) Second Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief (the "Second Amended Petition") (ECF No. 44);

3.   As a result of the parties' L.R. 7-3 discussions, Plaintiff elected to amend his Second Amended Petition and file a third amended petition (the "Third Amended Petition");

4.   Plaintiff has informed Defendants that he has retained counsel in this matter, Mr. Gustavo Lamanna, and thus has requested additional time to confer with Mr. Lamanna in order to prepare the Third Amended Petition;

5.   Given that Plaintiff has now retained counsel in this matter, Defendants have agreed to Plaintiff filing the Third Amended Petition without waiving any defenses they may have to the Third Amended Petition;

6.   On February 9, 2018, the parties stipulated (ECF No. 51)—and the Court ordered (ECF No. 52)—that:

a.   Defendants' deadline to respond to the Second Amended Petition is extended to March 23, 2018;

b.   The parties shall file a stipulation to amend Plaintiff's Second

1   Amended Petition by March 19, 2018, in compliance with L.R. 15-1; and

2                     c.   Plaintiff shall file his Third Amended Petition by March 19,

3   2018.

4           7.   Local Rule 15-1 states that "[a]ny proposed amended pleading must

5   be filed as an attachment to the related . . . stipulation."

6           8.   The parties now wish to file their stipulation to amend Plaintiff's

7   Second Amended Petition in compliance with L.R. 15-1;

8           9.   The parties agree that Plaintiff's Third Amended Petition—a proposed

9   copy of which is filed as an attachment to this Stipulation—is deemed filed and

10  served as of the date this Stipulation is filed;

11          10. The parties agree that Defendants shall respond to Plaintiff's Third

12  Amended Petition, by motion or otherwise, on or before April 23, 2018.

13

14  THEREFORE, in compliance with this Court's order dated February 14, 2018

15  (ECF No. 52), the parties hereby stipulate, subject to the Court's approval, that:

16          1.      Plaintiff's Third Amended Petition—a proposed copy of which is filed

17  as an attachment to this Stipulation—is deemed filed and served as of the date this

18  Stipulation is filed; and

19          2.      Defendants shall respond to Plaintiff's Third Amended Petition, by

20  motion or otherwise, on or before April 23, 2018.

21

22

23

24

25

26

27

28

1   Dated:  March 19, 2018         IN PRO PER

2

3                                   By: /s/ Barry Rosen
                                        BARRY ROSEN
4

5

6   Dated:   March 19, 2018        CITY OF SANTA MONICA

7

8                                   By: /s/ Ivan O. Campbell
                                        IVAN O. CAMPBELL
9
                                    Attorneys for Defendant
10                                  CITY OF SANTA MONICA

11

12
    Dated:  March 19, 2018         GARY D. FELDON, Trial Attorney
13                                 UNITED STATES DEPARTMENT OF
14                                 JUSTICE

15

16
                                    BY: /s/ Gary D. Feldon
17                                      GARY D. FELDON

18                                  Attorneys for Defendants
                                    UNITED STATES and FEDERAL
19                                  AVIATION ADMINISTRATION

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ECF ATTESTATION

I, Ivan O. Campbell, am the ECF user whose ID and password are being used to file this STIPULATION TO AMEND PLAINTIFF'S SECOND AMENDED PETITION.  In accordance with Civil Local Rule 5-4.3.4, concurrence in and authorization of the filing of this document has been obtained from Barry Rosen, Plaintiff in Pro Per, and Gary D. Feldon, counsel for Defendants United States and Federal Aviation Administration, and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated:  March 19, 2018          CITY OF SANTA MONICA

By:  /s/ Ivan O. Campbell
IVAN O. CAMPBELL

BARRY ROSEN
136 S. Clark Dr. #5
Los Angeles, CA 90048
Tel: (323) 653-2043

In Pro Per

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN, Individually and as a Private Attorney General<br><br>            Petitioner and Plaintiff,<br><br>            vs.<br><br>UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION, AND CITY OF SANTA MONICA,<br>            Respondents and Defendants. | **Case No. 17-CV-07727-PSG-JEMx**<br><br>**(VERIFIED) THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF ADMINSTRATIVE PROCEDURE ACT (APA), NATIONAL ENVIROMENTAL POLICY ACT (NEPA), CALIFORNIA ENVIROMENTAL QUALITY ACT (CEQA), CALIFORNIA STATE AERONAUTICS ACT, ET AL.** |

    This action seeks in part to invalidate the 2017 Settlement Agreement/ Consent Decree ("Decree") by and between the Federal Aviation Administration and City of Santa Monica related to Santa Monica Airport as invalid *ab initio*, due to the fact that the City improperly hired outside attorney's in violation of its own

City Charter and related Municipal Code(s) and then improperly filed the lawsuit (13-CV-08046-JFW-VBKx) without first having filed an administrative claim with the United States Government (or the proper agency thereof) and waiting six months pursuant to 28 U.S.C. § 2675 of the Federal Tort Claims Act ("FTCA") et al and was therefore forever precluded from doing so pursuant to 28 U.S.C § 2401 and thus the court lacked jurisdiction over the matter due to the failure to present such a claim.  Furthermore, that prerequisite administrative claim would have first needed to have been presented to the appropriate agencies United States General Services Administration ("GSA"), which is the successor agency to the War Assets Administration, with whom the City of Santa Monica had actually contracted under the1948 Instrument of Transfer ("Contract"), et al. Moreover, the Federal Aviation Administration "(FAA") lacked or otherwise overstepped its authority and/or violated the Administrative Procedure Act (APA) in entering into the Decree as it was never granted such authority by the US Congress pursuant to the United States Code ("USC"), nor was it in any way was a party to the Contract; failure to consider the dispute before entering into the Decree placed the FAA contractual obligation without any force of law or regulation. Even if the City had presented a proper claim (which it did not do) the GSA would have lacked the authority to fully release the airport as such relief could only be granted by an act of congress, as under the War Surplus Act, Congress intended that the Contract for the use as an airport, be in perpetuity and thus there is no provision in the USC for the full release of airport lands subject to the Contract pursuant to the previous acts of Congress. Plaintiff further seeks to invalidate the Decree due to the fact that certain city council members may have been precluded from voting for it and should have recused themselves due to conflicts of interest, et al under the California Political Reform Act. Additionally, the persons who where the

signatories on the Contract for both the FAA and the City lacked any legal authority to do so and thus the Contract is invalid for that reason alone.  The FAA signatories failed to comply their own law and regulations and those of the City violated the City's Charter.

Plaintiff also seeks to invalidate the previous improper release of lands at Santa Monica Airport by the FAA pursuant a 1984 agreement with the City of Santa Monica due to the fact that the FAA full lacked authority in releasing said lands due in part to the fact that it is not the successor to the Administrator listed in the Contract who is/was charged with such authority by Congress pursuant to the United States Code.

Even if this Court should find that the City of Santa Monica's lawsuit was proper and that the FAA had authority to approve the relief requested (which it did not have), the FAA's actions were still illegal and in violation of the Administrative Procedure Act and the National Environmental Protection Act, as they acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the required procedures, including but not limited to failing to consider the full effects of their actions and the rights of all interested and/or affected parties, along with obtaining commentaries for those affected parties and the public in general. Such parties include the United States Department of Defense and other US Agencies that have certain rights under the Contract, along with other parties that have rights over Santa Monica Airport such as State of California that has eminent domain under the California State Aeronautics Act (California Public Utilities Code § 21001 et seq.), the Plaintiff's in the Part 16 actions that were pending against the City of Santa Monica related to various violations of various Federal obligations and finally the general public and users of Santa Monica Airport. Moreover, the Federal Aviation Administration can neither

exempt itself, nor the City of Santa Monica from obligations under the National Environmental Protection Act and required environmental impact studies thereunder. The FAA therefore could not grant the right to the allow the City of Santa Monica to almost immediately shorten the runway without having first required Environmental Studies pursuant to NEPA. Moreover, under the Decree, the City of Santa Monica is fully responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at SMO, include the cost of conducting any necessary environmental studies or other requirements under NEPA. Plaintiff is aware that Santa Monica has not abided by or has otherwise breached such obligations, and that the FAA has also failed enforced those obligations.

Plaintiff is aware that the FAA has fully failed to ensure that the City of Santa Monica complies with all applicable regulations and obligations governing the operation and use Santa Monica Airport, as it has fully failed to do so. As such Plaintiff now seeks a Writ of Mandate on the FAA to ensure that the City of Santa Monica complies with the regulations and obligations that fall within the actual authority of the FAA to regulate flight operations at the airport, along with federal grant assurances.

Lastly, even if the Court should find FAA did not violate either the APA or NEPA, the City of Santa Monica has not met its obligations to comply with all State and local regulations pursuant to the requirements of the Decree and the terms of the 1984 Agreement with the Federal Aviation Administration, including but not limited to violation of the California State Aeronautics Act and California Environmental Quality Act [CEQA] (CA Pub. Res. Code, § 21050 et seq) and finally the regulations of the City of Los Angeles, with whom Santa Monica shares

THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

4

co-jurisdiction over the airport as the eastern portion is located in the City of Los Angeles.

Petitioner and Plaintiff, BARRY ROSEN, alleges against Defendants UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION AND CITY OF SANTA MONICA inclusive as follows:

## PARTIES

### Plaintiff

1. Plaintiff BARRY ROSEN ("Plaintiff") is an individual who currently and at all relevant times has resided within the County of Los Angeles, California. BARRY ROSEN is a licensed pilot, a user of Santa Monica Airport ("SMO") and owner of an aircraft based at SMO and who has been injured and continues to face damages by the Defendants improper actions. Plaintiff is a beneficially interested party and also brings this cause of action as a Private Attorney General under the Private Attorney General Doctrine in the public interest for the benefit of other persons similarly affected or situated.

### Defendants

2. Defendant UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION ("FAA") is an agency of the United States government and bears responsibility, in whole or in part, for the acts complained of in this Complaint.

3. Defendant CITY OF SANTA MONICA ("CSM") was and now is a municipal corporation organized and existing under the laws of the State of California and claims to be a Charter City, and operates Santa Monica Airport ("SMO") and bears responsibility, in whole or in part, for the acts complained of in this Complaint.

## JURISDICTION AND VENUE

4.     Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. § 1361 (action to compel officer or agency to perform duty owed to Plaintiffs), 5 U.S.C. §§ 701-706 (Administrative Procedure Act) and 28 U.S.C. § 1367 (Supplemental jurisdiction over additional claims substantially related to the original claim).

6.     An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because this is the judicial district in which both Plaintiff and Defendant City of Santa Monica resides and this action seeks relief against a Federal Agency and/or because a substantial part of the events giving rise to the claims have occurred in this district due to decisions and actions by Defendants.

## FACTUAL ALLEGATIONS

8.     Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

9.     Plaintiff, Barry Rosen, is a Pilot and user of Santa Monica Airport ("SMO"), and regularly performs Aircraft operations into and out of Santa Monica Airport ("SMO"), including those with his own Aircraft, which is based there. Plaintiff has also been damaged by the acts complained of in this Complaint and is therefor an affected and beneficially interested party.

10.     Plaintiff also brings this Action in the public interest as a Private Attorney General due to there being hundreds if not thousands of persons that are similarly affected or situated.

11.     SMO is one of the oldest and busiest single-runway general aviation airports in the country.  Over 80,000 aircraft operations occur at the Airport annually.

12.     The City of Santa Monica lacks full sovereign jurisdiction of SMO as the eastern most portion of SMO is located within the City of Los Angeles and is fully subject to the jurisdiction of the City of Los Angeles. The City has previously acknowledged such jurisdiction by the City of Los Angeles. Such acknowledgment includes having previously pulled construction permits from the City of Los Angeles for construction work done in the Los Angeles portion of the airport.

13.     The City of Santa Monica leased SMO to the federal government during World War II, during which the Federal Government purchased additional land and thereby enlarged and reconfigured the SMO into its current runway and taxiway configuration. In 1948, the Federal Government transferred Airport land, buildings, structures, improvements and equipment to the City for public airport purposes via a 1944 War Surplus Property Act Instrument of Transfer in 1948. That 1948 Instrument of Transfer demonstrates that the Contract was with the War Assets Administration (the successor of which is the General Services Administration), as well as the burdens and covenants running with the land, binding the City and "its successor and assigns forever," requiring the Airport to be used for 'air park,' civil aviation, and airport purposes forever.

14.     The Terms set forth in the 1948 Instrument of Transfer were dictated by an act of Congress pursuant to the Surplus Property Act of 1944.

15.     The City clearly agreed to the terms of that Contract when it approved it by passing a City Council resolution accepting the Contracts terms and then signing the Contract.

16.     That 1948 Instrument of Transfer demonstrates that the United States of America (Federal Government) has certain rights to utilize SMO and that in the event of a national emergency can take exclusive possession of the SMO (see 1948 Instrument of Transfer paragraphs 2 and 3). It also gave the right to the War Assets Administration or successor thereto to take possession of the Airport should the City of Santa Monica fail to perform its obligations thereunder.

17.     That 1948 Instrument of Transfer also demonstrates that portions of the property may have restrictions released for non-aviation purposes only if those purposes do not materially affect operation or maintenance of the Airport at which such property is located and that in order to effect such release, a payment shall be made to the War Assets Administration or successor thereto for the removal of such restrictions.

18.     Pursuant to the Federal Property and Administrative Services Act of 1949, et seq, congress designated new successors to the parties listed in the 1948 Instrument of Transfer, which did not include the FAA, which did not come into existence until 1959 (ten years later).

19.     In 1984, the City of Santa Monica and FAA entered into an agreement (for reasons that are not fully apparent) that amongst other things, (improperly) released land restrictions on portions of Santa Monica Airport for non-aviation purposes, when the FAA had absolutely no congressional authority to do so. Although the agreement expired in July of 2015, the remnants of said agreement remain, including the fact that CSM only recently removed numerous acres of land from Aviation usage.

THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

8

20.     Some of those recently removed lands were still being used for aviation and subjected in a federal grant assurances in 2003, obligating those lands to continue to be used for aviation purposes until at least 2023. The City improperly ceased using those lands for aviation purposes in 2016, in violation of their federal grant assurances. The FAA has fully failed to take action to correct the grant assurance violation(s).

21.     Paragraph 6 of the 1984 Agreement also demonstrates that no consideration was ever given to the fact that a payment shall made to the War Assets Administration or successor thereto for the removal of such land use restrictions as required under the 1948 Instrument of Transfer.

22.     The 1984 Agreement also demonstrates that the City of Santa Monica had perform certain obligations under the agreement, including the development and implementation of an Airport Layout Plan (aka Airport Land Use Plan) and that CSM must be in conformity with State and local planning law (see sections 5 & 6). Such conformity would include environmental studies under the California Environmental Quality Act, approval of the Airport Land Use Plan by the Los Angeles County Airport Land Use Commission  ("ALUC") (Public Utilities Act § 21675.1), and all appropriate approvals by the City of Los Angeles (and its City Council) pursuant to the Los Angeles City Charter and Municipal code.

23.     Plaintiff is informed and believes that City of Santa Monica fully failed to perform its obligations under the 1984 Agreement and thus the agreement was probably never effective or valid.

24.     In October 2013, the City of Santa Monica brought an action against the United States Federal Aviation Administration in City of Santa Monica v. United States Government Federal Aviation Administration, et al., Case No. CV 13-8046-JFW-VBKx (C.D. Cal.) (hereafter "Action"). This Action alleged five causes of

action for: Quiet Title; Violations of the Fifth Amendment under theories of Taking, Regulatory Taking, and due process; and Violation of the Tenth Amendment. The prayer for relief demanded: Declaratory judgments regarding the title to the Airport Property and the City's contentions regarding violations of the United States Constitution; that the court "enjoin the United States from taking any action affecting Santa Monica's right, title, or interest in the Airport Property … from demanding or asserting in any forum that Santa Monica must operate the Airport Property as an airport in perpetuity"; and that the court "order that the United States shall cease and desist from taking any action to require Santa Monica to operate the Airport Property as an airport after the 1984 Agreement expires in July of 2015."

25.     In bringing the 2013 Action, the City Attorney improperly hired an outside law firm (Morrison & Foerster) to bring the lawsuit in violation of both § 608 of the City Charter and § 2.24.073 of the Municipal Code.

26.     Prior to filing the 2013 Action, the City failed to file a claim with the "appropriate government agency" and wait six (6) months pursuant to 28 U.S.C. § 2675, et al before bringing a Quite Title Action, etc. As a result, the City was/is precluded from bringing a claim pursuant to 28 U.S.C § 2401.

27.     In January 2017, the City of Santa Monica and FAA improperly entered into a Settlement Agreement/ Consent Decree to settle Case No. CV 13-8046-JFW (VBKx) (C.D. Cal.). As part of that agreement, the FAA (improperly) consented to the full release of the land restrictions and the eventual closing of the airport, along with an almost immediate shortening of the runway at SMO to 3500 feet (with 30 days notice) and that "The City shall be responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at SMO. The City's responsibility shall include the cost of

THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
10

conducting any necessary environmental studies or other requirements under the National Environmental Policy Act (NEPA). 42 U.S.C. § 4321 et seq."

28.     The City thereafter violated numerous Federal, State and local laws in performing the Construction work at Santa Monica Airport to shorten the runway, including but not limited to doing construction work without having first obtained construction permits for such work pursuant to both the Santa Monica Municipal and Los Angeles Municipal codes.

29.     This action now arises in part from the fact that the City of Santa Monica improperly filed the Action without first having submitted a prerequisite claim pursuant to 28 U.S.C. § 2675, and that the FAA either fully lacked any authority or that it overstepped its authority and/or violated the Administrative Procedure Act (APA) in entering into the Decree and by releasing lands pursuant to the 1984 agreement and that the FAA has failed to do little if any oversight regarding regulatory compliance by the City Santa Monica, ET AL as outlined below:

**<u>Invalid Contract with Outside Counsel</u>**

30.     In the fall of 2013, the Santa Monica City Attorney hired an outside law firm (Morrison & Foerster) to bring a lawsuit against the FAA on behalf of the City of Santa Monica. Pursuant to § 608 of the City Charter and § 2.24.073 of the Municipal Code, the City Attorney had to meet certain obligations in order to hire outside counsel, including but not limited to conducting a competitive search process via requests for proposals or by the express approval of the City Council.

31.     In October 2017, Plaintiff sought to obtain records pursuant to the California Public records Act (CA Government Code § 54950 et seq) to see if the City Attorney had met the obligations for hiring outside counsel Pursuant to § 608 of the City Charter and § 2.24.073 of the Municipal Code. No documents whatsoever

were produced to demonstrate that the City Attorney (and/or City Council) had complied with all obligations required for hiring outside counsel.

32.     Plaintiff is informed and believes that City Attorney neither conducted a competitive search nor sought the express approval of the City Council as required by both the City Charter and Municipal Code and that the contract with Morrison & Foerster was invalid *ab initio* because of the failure to do so.

33.     Plaintiff is informed and believes that the contract with Morrison & Foerster should now be struck down by the invalid *ab initio*, along with all work product related thereto due the CSM's failure to comply with its own City Charter and Municipal Code in contracting with outside counsel.

**Santa Monica had absolutely no right to bring an Action pursuant to 28 U.S.C. § 2675, Et Al.**

34.     As discussed above, prior to bringing the type of Action that was brought, the City was required to file a claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675, et al before bringing such an action. Pursuant to 28 U.S.C. 2409a(m), the City, like the State, would be required to notify the FAA six (6) months prior to filing its suit; 28 U.S.C. 2409a(g), also serves as a bar to the relief sought. Without ever having filed such claims and exhausted administrative remedies, it is well settled in case law that the City was precluded from bringing such a claim pursuant to 28 U.S.C § 2401, pursuant to the doctrine of "sovereign immunity".

35.     As discussed above, such an administrative claim under both 28 U.S.C. §§ 2675(a) and 2409a(m), would need to have been filed with the appropriate agency/agencies.  In this instance, the appropriate agency at a minimum was the GSA (successor to the War Assets Administration). As the claim involved numerous issues concerning multiple agencies, it is likely that there were at least 3

separate administrative claims that were needed to have been presented to multiple federal agencies.

36.    Plaintiff is informed and believes that no evidence exists that the City ever filed such an administrative claim (or claims) under 28 U.S.C. § 2675, et al, prior to bringing the Action at issue and was therefore precluded from bringing such an Action.  Absence of such evidence divests both the FAA and City from the force of law sought under the Decree; in other words, the Court, FAA, and City had no authority without the claim filing *a priori*.

37.    Plaintiff is informed and believes that the lawsuit was filed by City because of false assumptions it had made about the 1948 Instrument of Transfer, rather than the terms and conditions actually contained within it. Plaintiff further believes that numerous inappropriate actions taken by the FAA itself over time (including the 1984 agreement), have further promulgated these false assumptions by the City.

38.    Plaintiff is informed and believes that the City (and or its outside attorney's acting on its behalf) failed to do their proper due diligence prior to filing the Action, including but not limited to filing administrative claims with the appropriate agencies.

39.    Plaintiff is informed and believes that the Action should now be struck down as invalid *ab initio* due the CSM's failure file an administrative claim with the appropriate agency (or agencies) and/or exhaust all administrative options prior to commencing the Action.

### The Court Lacked Jurisdiction over CSM's Action

40.    The requirement that a claim be asserted administratively (28 U.S.C. § 2675, 28 U.S.C. § 2409a(m)) is jurisdictional and must be properly framed in the complaint (Rule 8(a), F.R.C.P.). It should allege that an administrative claim was asserted and was either denied or that after a period of 6 months the agency

concerned failed to make final disposition of the claim. Without such proper framing and allegation, the Court lacks jurisdiction over the action.

41.   Plaintiff is informed and aware that it is clear that the City of Santa Monica failed to allege in its complaint that an administrative claim was asserted. As a result, the court fully lacked jurisdiction over the Action

42.   Where the facts disclose that an administrative claim has not been filed or finally acted upon, the U.S. Attorney has an obligation to advise the plaintiff's counsel, in writing, of the jurisdictional defect in the action, request that the plaintiff take a voluntary nonsuit, and advise that unless this is done within 10 days, the United States will be obliged to move to dismiss the action for failure to pursue and exhaust the administrative remedy. This also give rise to a question as to the application of the statute of limitations in 28 U.S.C. 2401(b).

43.   Plaintiff is informed and believes that U.S. Attorney did not artfully perform its duties to advise the plaintiff's counsel, in writing of the jurisdictional defect in the Action and/or move to dismiss the action for failure to pursue and exhaust the administrative remedy pursuant to the obligation to do so.

44.   Plaintiff is informed and believes that the Action should now be struck down as invalid *ab initio* due the fact that the court lacked jurisdiction due to CSM's failure file an administrative claim (and exhaust its administrative remedies) with the appropriate agency (or agencies) prior to commencing the Action.

## FAA Overstepped its Authority in the 1984 Agreement

45.   As discussed above, in 1984, the City of Santa Monica and FAA entered into an agreement (for unknown reasons) that amongst other things, released land restrictions on portions of Santa Monica Airport for non-aviation purposes. Such release was completely improper as the actual release would have needed to come from successors of both the GSA (the successor to the War Assets Administration)

and statutory successor to the <u>Administrator</u> of the Civil Aeronautics Administration pursuant to various provisions of the United States Code as codified by acts of Congress in 1949, 10 years before the FAA came into existence.

46.     Plaintiff is informed and believes that the FAA (and its administrator) are **<u>not</u>** the statutory successor to the Administrator of the Civil Aeronautics Administration and therefore had no statutory authority (as codified by act of Congress in the United States Code) to release land restrictions on portions of Santa Monica Airport for non-aviation purposes.

47.     It is also clear that the 1984 Agreement demonstrates that no consideration was ever given to the fact that as defined in the 1984 Agreement itself, "a payment shall made to the War Assets Administration or successor thereto for the removal of such land use restrictions" and thus any release of any land restrictions on portions of Santa Monica Airport for non-aviation purposes was invalid *ab initio*.

48.     While the 1984 Agreement expired in July of 2015, the ongoing remnants of said agreement remain, including the fact that CSM as recently as 2016 removed numerous acres of land at SMO from Aviation usage and intends to remove even more. Plaintiff is informed and also believes that the acres of land removed from aviation usage last year were in violation of the terms a 2003 federal grant assurance.

49.     Plaintiff is informed and believes that the FAA is aware that the 2016 removal of lands was in fact in violation of the terms a 2003 federal grant assurance, but has failed to take any steps pursuant to its ministerial obligations to enforce the grant assurance.

50.     Plaintiff is informed and believes that any releases of land restrictions on portions of Santa Monica Airport for non-aviation purposes pursuant to the 1984

THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

15

agreement should now be struck down as invalid due to the fact that the FAA had no authority to release such lands in the first instance.

### The Decree is Invalid ab initio because FAA Overstepped its Authority

51.    As discussed above, the 1948 Instrument of Transfer demonstrates that the contract was between the City of Santa Monica and the War Assets Administration (the successor of which is the General Services Administration) and not with the FAA and that the full relief sought under 13-CV-08046-JFW-VBKx could never has been granted the FAA as it would actually take an act of congress to fully release the airport from obligations under the 1948 instrument of transfer pursuant to the War Surplus Act of 1944, et al. In a case involving the Half Moon Bay Airport, the Federal government successfully asserted its interest against a water district and set out relevant precedent as they too had roughly similar covenants as before the Court; furthermore and in line with that case, the City's attempt to quiet the Federal government's interest in the Santa Monica Airport may not even squarely fit inside the quiet title act as the City and FAA had a dispute on the status of the airport and not title per se. *Montara Water and Sanitary Dist. vs. County of San Mateo* (N. D. Cal., 2009) 598 F. Supp.2d 1070, 1076 citing *Kansas vs. United States* (10th Cir. 2001) 249 F.3d 1213, 1225 (disputes concerning the status are not title disputes).

52.    It is also clear that under the 1948 Instrument of Transfer, that even if the FAA and its Administrator had authority (which it does not have) to do anything, it would at best be limited to only releasing of portions of the airport property from restrictions for non-aviation purposes, and only if those purposes do not materially affect operation or maintenance of the Airport at which such property is located. It is abundantly clear that the FAA **does not** have any authority to allow closure of an airport as was improperly agreed to in the Decree. As illustrated in *Montara*, it was

the intent of Congress that airports subject to War Surplus Act instruments of transfer (like Santa Monica Airport) were to be operated as an airport in perpetuity. Only pursuant to an act of the US Congress would there be any authority to fully release Santa Monica from obligations under the 1948 Instrument of Transfer that the Airport be operated as an airport in perpetuity. As Congress has never taken such action, no authority exists/existed that would allow for a release of such obligations (i.e. allow for closure of the airport).

53.     It is very clear that under 1948 Instrument of Transfer, in order to effect any release of lands, a payment **shall** be made to the War Assets Administration or successor thereto for the removal of such restrictions.

54.     It is also clear that no such payments or any consideration thereof (or waiver thereof) was included in either the 1984 agreement or in the Decree and therefore without such provisions for payment, etc. to the General Services Administration, the any release of lands are fully invalid. Moreover, it is clear that the GSA did not sign off on the agreement.

55.     Plaintiff is informed and believes because FAA is not a party to the 1948 Instrument of Transfer and because the FAA overstepped its authority in releasing the entire Airport and its lands from the 1948 Instrument of Transfer, when it clearly had no right to do so, the entire Decree along with certain provisions of the 1984 agreement should now be struck down as invalid.

## Administrative Procedure Act

56.     The Administrative Procedure Act (APA) provides a right to judicial review to any "person suffering legal wrong because of agency action." 5 U.S.C. § 702. The APA defines agency action to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §§ 551(13), 701(b)(2).

57.     The APA provides that a court shall compel an agency action that is "unlawfully withheld or unreasonably delayed," and shall hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(1) & (2)(A).

58.     5 U.S.C. § 706 provides that, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). The "arbitrary and capricious" standard forms a separate basis to set aside agency action, 5 U.S.C. § 706(2)(A),

59.     Plaintiff is informed and aware that Federal agencies are also required to consider the "reasonably foreseeable" effects of the proposed major Federal action, including effects that are direct, indirect, or cumulative. 40 C.F.R. §§ 1508.7, 1508.8, 1508.25., which Plaintiff believes that the FAA has not done as outlined below.

60.     Plaintiff alleges that FAA actions violated 5 U.S.C. sections 553, 705, and 706, and now seeks a declaratory judgment that Defendants acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the required procedure in entering into and the Decree and certain provisions of the 1984 agreement with the City of Santa Monica.

61.     Also as discussed above, the FAA had no congressional authority whatsoever to release any lands, let alone fully release the City of Santa Monica from all of its land use obligations under 1948 Instrument of Transfer and/or allow eventual closure as it did in the Decree. As such, it is clear that the FAA overstepped its authority and acted arbitrarily, capriciously, contrary to law, abused their discretion, and failed to follow the required procedures.

62.     Even if the FAA had the right to enter into the Decree (which it did not) FAA actions violated 5 U.S.C. sections 553 because it fully failed to consider the full effects of their actions in entering into the decree and the rights of all interested and/or affected parties. In brief, the FAA was required to obtaining public commentaries public in general and especially from affected parties. Such parties would include airport users such as Plaintiff, the United States Department of Defense and other US Agencies that have certain rights under 1948 Instrument of Transfer, along with other parties that have rights over Santa Monica Airport. Such other parties include the State of California, which has eminent domain under the California State Aeronautics Act (California Public Utilities Code § 21001 et seq.), the City of Los Angeles, which shares co-jurisdiction over the airport and/or the County of Los Angeles.

63.     At the time of the Decree, there were Part 16 actions pending with the FAA against the City of Santa Monica related to various violations of various Federal obligations that were purportedly also settled as part of the Decree. Plaintiff is informed and believes that the FAA had specific obligations to discuss possible resolution with the named Plaintiff's who actually filed those Part 16 actions (and/or non named parties whose potential claims were also represented as a class by those Part 16 actions)

64.     The FAA violated its obligations under the APA by granting the City of Santa Monica the right to shorten the runway (with 30 days notice) without having undertaken it obligations under NEPA to determine any possible detrimental effects that may occur to the National Airspace System.

65.     The FAA also violated its obligations under the APA by granting the City of Santa Monica the right to shorten the runway (with 30 days notice) without having considered the safety issues that would arise from pilots having outdated charts

reflecting the wrong runway length information. The main charts relied upon by pilots are only published twice a year and Plaintiff is aware that there is a long lead-time to make any corrections or changes to those charts. As a result, because the FAA allowed the City to shorten the runway without having properly updating charts, it created a very dangerous situation, wherein pilots were unable to ascertain that they might be flying into an airport wherein the runway was not long enough for either their arrival or departure.

66.    Plaintiff is informed and believes that such failure on the part of the FAA to ensure that charts were fully updated, actually resulted in numerous problems from pilots, including buy not limited to missed approaches due to the shortened runway, resulting in problematic consequences to the National Airspace System, that may have resulted in such things as delays at other airports and additional costs to other aircraft operators and or potential aircraft spacing issues.

67.    Plaintiff contends that the Court should order vacatur of the portions of the 1984 agreement wherein the FAA illegally and improperly released lands, because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

68.    Plaintiff contends that the Court should order vacatur of the entire Decree since the FAA fully lacked authority to enter into the Decree, because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

69.    Plaintiff contends that the Court should order vacatur of the entire Decree since the failed to seek public and interested party input and otherwise failed to fully realize the effects of their actions, because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

## National Environmental Policy Act

70.    The National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. Requires in part that a Federal agency consider the environmental impact of its proposed action, and calls for detailed statement is called an environmental impact statement or EIS pursuant to 42 U.S.C. § 4332(2)(C).

71.    Even if the Decree were valid (which it is not), Plaintiff is informed and believes that the FAA failed to do an EIS of its own to determine any possible detrimental effects that may occur to the National Airspace System, potential dangers to pilots, ET AL in taking actions wherein it (improperly) entered into a Decree with the City of Santa Monica wherein it granted the ability to shorten the runway to 3500 feet (on very short notice) and to eventually close the airport altogether. Such failure also constitutes a violation of the APA as asserted above.

72.    Even if the court Decree were valid (which it is not) Plaintiff is aware that the City of Santa Monica has an obligation pursuant to Paragraph II (c) of the Decree to perform Environmental Studies wherein the "City shall be responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at SMO. The City's responsibility shall include the cost of conducting any necessary environmental studies or other requirements under the National Environmental Policy Act (NEPA). 42 U.S.C. § 4321 et seq."

73.    Plaintiff is informed and believes that the City of Santa Monica did indeed shorten the runway without complying with its Environmental Studies obligations pursuant to Paragraph II (c) of the Decree.

74.    Plaintiff is informed and believes that the FAA has violated its obligations under the Decree, ET AL to ensure that the City of Santa Monica has complied with all of its local, state and federal environmental requirements prior to allowing

any shortening to begin. Such failure also constitutes a violation of both NEPA and the APA.

75.     Plaintiff is informed and believes that both the FAA and City of Santa Monica should be now ordered to comply with Environmental Requirement obligations pursuant to both state and federal law.

76.     Plaintiff is informed and believes that the FAA and City of Santa Monica should now be ordered to reverse the shortening of the runway until such time as all Environmental Requirements are met by the City of Santa Monica.

77.     Plaintiff is informed and believes that the City of Santa Monica also failed to follow FAA procedures (including giving proper notice) prior to starting construction to shorten the runway and as such was precluded from doing so. As such the FAA and City of Santa Monica should now be ordered to reverse the shortening of the runway until such time as all FAA requirements are met by the City of Santa Monica.

## Lack of authority for the parties to enter into the Decree

78.     The signatories executing the Decree on behalf of the FAA and the City did not have authority to bind the FAA or the City, thus further rendering the Decree void *ab initio*.

79.     Under Section VIII, Paragraph D, the representatives of the FAA and City certify they are authorized to enter into the Decree, also referenced as a settlement agreement concerning the disposition, status, and closure of the Santa Monica Airport. However, the signatories Reginald C. Govan, as Chief Counsel of the FAA and Rick Cole, as City Manager of the City did not have the conferred authority to accomplish the feats attempted in the Decree.

80.     Under California law, and specifically, *Davidson vs. Sup. Ct. (City of Mendota)* (1999) 70 Cal.App.4th 514, 528, a settlement agreement was held

unenforceable because it was based on stipulated settlement signed only by attorneys. Here, Reginald C. Govan is not the authorized signatory of the FAA and as Chief Counsel, under California law, did not bind the FAA.

81.     Under the counter-initiative the City filed in 2014 against pilots of the Santa Monica Airport, the City Council itself reserved all authority to regulate, manage, and permanently close all or part of the Santa Monica Airport. This initiative was codified as City Charter section 640. When Rick Cole as City Manager signed the Decree, there was no resolution or ordinance of the City Council authorizing the City Manager to act on behalf of the City Council; furthermore, Charter section 640 states "City Council" not the "City Manager" and the oral report out of a closed session by the City Attorney had no force to abrogate Charter section 640. Lastly, the Decree never appeared as an agendized item for public scrutiny before the City Manager signed it demonstrating a lack of a formal City Council action, resolution, or ordnance empowering the City Manager to act on behalf of the City Council.

82.     Plaintiff is informed and believes that the Decree should be held invalid and unenforceable as the signatories placing their signatures on behalf of the FAA and City did not possess the authority to bind the FAA and City to the Decree and their signatures and the Decree should now be struck down for failure to comply with the appropriate California law and Santa Monica Charter.

## Violation of the State Aeronautics Act and CEQA

83.     The California State Aeronautics Act (California Public Utilities Code Section 21001 et seq.) governs various matters relative to aviation in this state. places a number of licensing and other requirements on public airport operators.

84.     Public Utilities Code (PUC), Section 21675(a) requires preparation of an airport land use compatibility plan (ALUCP) for each public use airport in the state.

85.   The ALUCP is designed to encourage compatible land uses in the vicinity surrounding an airport. It provides for the "orderly growth of each public airport and the area surrounding the airport" while safeguarding "the general welfare of the inhabitants within the vicinity of the airport and the public in general (PUC Section 21675(a))." The ALUCP contains criteria for making consistency determinations, including building standards and height and land use restrictions.

86.   An ALUCP must be formulated for "each public airport" (i.e., as in this case, an airport operated for the benefit of the general public) within the jurisdiction of the Airport Land Use Commission (ALUC) (Section 21675(a)).

87.   Prior to the amendment of a general plan or specific plan, or the adoption of a zoning ordinance or building regulation within the ALUCP planning boundary, the ALUC shall review the plan, ordinance, or regulation for consistency with the ALUCP (PUC Section 21676(b)).

88.   The adoption or amendment of an ALUCP is a "project" under California Environmental Quality Act (CEQA; Public. Resources Code (PRC), Section 21000 et seq.) and thus requires an Environmental Impact Report be done.

89.   Plaintiff is informed and believes that the City of Santa Monica has consistently failed in its obligations under the State Aeronautics Act to prepare and submit and airport land use compatibility plans (ALUCP) to the LA County Airport Land Use Commission (ALUC) and that it so doing, it has also violated its obligations under CEQA.

90.   Plaintiff has personally checked with the LA County Airport Land Use Commission to see if the City of Santa Monica ever submitted ALUCP related to the 1984 agreement and found that it did not do so.

91.   Plaintiff is informed and believes that the City of Santa Monica proceeded with construction (i.e. shortening the runway) without first having submitted a new

ALUCP for approval by the LA county ALUC and conducting required environmental studies related thereto.

92.    Plaintiff is informed and believes that because CSM entered into the Decree allowing it to both shorten the runway and to close the airport, the City was required to notify the State of California pursuant to Section 21605 so that it may determine if such activities will have impact on the entire state air transportation system and so that it can take steps to protect entire state air transportation system from any impact that such activities might create. Plaintiff is further informed and believes that CSM failed to take such required steps.

93.    Plaintiff believes that the State of California has eminent domain to take steps to prevent the City of Santa Monica from making changes or closing the airport should it feel that such activities will have impact on the entire state air transportation system, including but not limited to taking possession of the airport.

94.    Plaintiff is informed and believes that actions of the City of Santa Monica and the FAA have negatively impacted the state air transportation system.

95.    Plaintiff is informed and believes that the City of Santa Monica has failed in its obligations under the California Public Utilities Code Section 21001 et seq, CEQA and specifically Section 21605. Plaintiff is further informed and believes that State was denied the opportunity to take its own appropriate actions, but for the fact that CSM failed to perform its obligations.

96.    Plaintiff is informed and believes that the City of Santa Monica should now be ordered to comply with all state regulations under the California State Aeronautics act.

**Decree is Invalid due to City Council Conflict of Interest.**

97.    Plaintiff is informed and believes that at least one if not more Santa Monica City Council members who voted to approve the Decree, were in fact fully

prohibited from voting for to approve the Decree as they are affected parties with conflicting interests (including financial) pursuant to the California Political Reform Act (Gov. Code, § 87100 et seq) and Government Code section 1090.

98.    Plaintiff is informed and believes that councilman/Mayor Edward J. "Ted" Winterer was in fact one of those affected parties with conflicting interests as Plaintiff has is aware that Mr. Winterer lives directly upwind from the end of the runway under the normal flight path and would benefit (financially and otherwise) from the closure of the airport.

99.    Here, the conflict is evident and there was no disclosure by the Mayor. The Mayor's financial investment interest and its proximity to the Santa Monica Airport is a realistic possibility, i.e. more than hypothetical or theoretical, and the change from an Airport to office use like the Santa Monica Business Park is likely to increase the Mayor's property nearby the airport. Therefore, there is violations of 2 Cal. Code Regs 18701(b) and at minimum an analysis of the financial interest should have taken place and disclosure was proper and appropriate.

100.   Santa Monica City Council City Council minutes show that the approval of the Decree was by a narrow 4 to 3 vote (4 in favor, 3 against) Plaintiff is informed and believes that had Mr. Winterer recused himself as required by law for conflict of interest, the City Council would have lacked enough votes to approve entry into the Decree.

101.   Plaintiff is informed and believes that the vote of Mr. Winterer should now be struck down for failure to recuse from voting for conflict of interest, which would mean that the resolution to approve Decree did not have enough votes to have been approved, assuming that the vote was sufficient to settle the case, as there was no written authorization to the City Manager to execute the Decree. This conflict of interest and violation of the Political Reform Act, Government Code

section 1090, and 2 Cal. Code Regs. 18701 are likely the reason the Mayor did not sign the Decree.

### Violation of the Local Regulations and CEQA

102.   As discussed above the City of Santa Monica shares co-jurisdiction over the Santa Monica Airport because the eastern portion is located in the City of Los Angeles. As a result of this co- jurisdiction, the City of Santa Monica was required to seek all appropriate approvals by the City of Los Angeles (and its City Council) pursuant to the Los Angeles City Charter and Municipal code prior to any activities or construction that involves the Los Angeles portion of the Airport. This would also include providing the City of Los Angeles with Environmental impact reports to the City of Los Angeles as required under CEQA.

103.   Plaintiff is informed and believes that the City of Santa Monica has and continues to completely ignore that fact that it lacks full sovereign jurisdiction of the Airport and thereby fails to seek appropriate approvals, construction permits etc. from the City of Los Angeles.

104.   Plaintiff has checked with the City of Los Angeles and has found that in the past, City of Santa Monica has in fact sought building permits from the City of Los Angeles, demonstrating that it is/was aware of its obligations to the City of Los Angeles.

105.   Plaintiff is informed and believes that that City of Santa Monica previously built parking lots that it rents out to Car Dealerships for the storage of cars, without first having sought appropriate approvals/permits from the City of Los Angeles.

106.   Plaintiff is informed and believes that that City of Santa Monica not only approved a plan for the shortening of the runway that involves construction on/in the City of Los Angeles portion of the airport without taking steps to seek

appropriate approvals, construction permits etc. from the City of Los Angeles, but that it actually engaged in illegal construction without proper permits.

107.   Plaintiff is also aware that Santa Monica Airport is essentially bounded on 3 sides by City of Los Angeles and that the City of Santa Monica did construction work from 9pm to 7am less than a few hundred feet from residences located in the City of Los Angeles without proper permits to do so.

108.   Plaintiff is informed and believes that the City of Santa Monica should now be ordered to comply with all local regulations related to the City of Los Angeles portion of the airport. Plaintiff is further informed and believes that that the City of Santa Monica should now be ordered to reverse all illegal construction that it engaged in without proper permitting, etc.

109.   Plaintiff is informed and believes that the City of Santa Monica engaged in illegal construction at Santa Monica Airport without proper permits pursuant to its own municipal and building codes. Plaintiff checked with the City of Santa Monica and has found that in the past, that it has in fact sought building permits from the itself for construction activities at the airport, demonstrating that it is/was aware of its obligations under its own municipal and building codes.

110.   Plaintiff is informed and believes that the City of Santa Monica should now be ordered to comply with it own all local regulations its own municipal and building codes. Plaintiff is further informed and believes that that the City of Santa Monica should now be ordered to reverse all illegal construction that it engaged in without proper permitting, etc.

### Failure to Enforce Federal Regulations Governing Public Airports

111.   Plaintiff is informed and believes that the FAA has consistently failed to enforce its regulations related to Santa Monica Airport. Plaintiff is aware of numerous violations of such regulations, including the fact that the City of Santa

Monica has been very discriminatory towards aviation in general and has engaged in numerous activities to keep or otherwise exclude aviation interest from the airport, including but not limited to setting up a business licensing system wherein it has routinely denied licenses for aviation related activities.

112.   Plaintiff is informed and aware that the City of Santa Monica has engaged in numerous activities that involve revenue diversion, wherein the City has rented buildings, spaces, etc. for non-aviation activities at below market rates and/or has used the airport facilities for its own purposes without payment for said usage to name a few. The City has fully admitted to such revenue diversion to the FAA in response to a Part 16 filing that alleged such diversion, yet the FAA has never taken any action whatsoever.

113.   Plaintiff is informed and aware that that a large percentage of hangers located at the airport are occupied by non-aviation activities in violation of numerous FAA policies. Plaintiff is also aware that at least another ¼ of the hangers at the airport are currently unoccupied due to the fact that the City is discriminating against aviation by trying to charge rental fees that are far higher than any other airport in the region and that may be in violation of other city regulations. Plaintiff is also on the hanger waiting list (which is very long) and has been on it for a couple of years.

114.   Plaintiff is informed and believes that the City of Santa Monica also violated numerous FAA policies when it instituted the current landing fees at SMO, yet the FAA has never taken any action whatsoever to see if those fees are both legal and warranted.

115.   Plaintiff is also aware that the City of Santa Monica specifically violated it federal grant obligations when it recently closed off a section of the airport to

aviation, when it had used federal grant money for improvement of the section of the airport.

116.   Plaintiff is informed and believes that the FAA should now be ordered to take steps to fully ensure that the City of Santa Monica complies with all of its regulations. Plaintiff also believes that the City of Santa Monica should be ordered to comply with all FAA regulations

## FIRST CLAIM FOR RELIEF
## DECLARATORY RELIEF

117.   Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and Exhibits as if fully set forth herein.

118.   Plaintiff brings this cause of action as both an affected party and a Private Attorney General under the Private Attorney General Doctrine in the public interest as of other persons similarly affected or situated.

119.   As discussed above, Plaintiff is informed and believes that because the City failed to properly contract with outside counsel, the court should declare the contract and work product related thereto including lawsuit, 13-CV-08046-JFW-VBKx invalid ab initio such failure.

120.   As discussed above, Plaintiff is informed and believes that because the City of Santa Monica failed to file a claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before bringing such an action before it exhausted administrative remedies, the court should declare the lawsuit,  13-CV-08046-JFW-VBKx  invalid  ab  initio  for  failure  file  an administrative claim prior to filing the Action.

121.   Also as discussed above, Plaintiff is informed and believes that because the City of Santa Monica failed to file a claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before

bringing such an action before it exhausted administrative remedies, and because it failed to properly frame/allege in its complaint that an administrative claim was asserted, the court fully lacked jurisdiction over the Action. The court should declare the lawsuit, 13-CV-08046-JFW-VBKx invalid ab initio for failure lack of jurisdiction.

122.    Also as discussed above, Plaintiff is informed and believes that because the City of Santa Monica failed to file a claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before bringing such an action before it exhausted administrative remedies, the FAA had certain obligations to have the Action dismissed and/or overstepped its authority entering into the Decree when it clearly had no right to do so. The court should declare that the entire Decree is invalid *ab initio* due to the fact that the FAA failed to have the Action dismissed and/or had no actual authority to enter into such a Decree.

123.    Plaintiff contends that the Court should order vacatur of the entire Decree since the FAA fully lacked authority to enter into the Decree because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

124.    Also as discussed above, Plaintiff is informed and believes that because the FAA lacked authority to release land restrictions on portions of Santa Monica Airport for non-aviation purposes pursuant to the 1948 Instrument of Transfer agreement the court should now declare that any such releases pursuant to the 1984 agreement as invalid *ab initio*.

125.    Also as discussed above Plaintiff is informed and believes that the votes of certain conflicted city council members should now be struck down for failure to recuse themselves from voting for conflict of interest pursuant to the California

Political Reform Act (Gov. Code, § 87100 et seq) and 2 Cal. Code Regs. 18701(b), rendering approval of the Decree by the City Council invalid.

126.  Plaintiff contends that the Court should order vacatur of the portions of the 1984 agreement wherein the FAA illegally and improperly released lands because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

127.  As discussed above, even if the court should somehow find that both the Action and Decree were valid, Plaintiff contends that the Court should order vacatur of the entire Decree since the FAA violated the APA by failing comply with NEPA and to seek public and interested party input and otherwise failed to fully realize the effects of their actions, because it is required under the APA, see 5 U.S.C. § 706(2), and is the "standard remedy" when a court concludes that an agency's conduct was illegal under the APA.

128.  As discussed above, the court should declare that the runaway shortening and construction were illegal due to the failure of CSM to comply with all local, state and federal obligations and require that CSM undo or otherwise reverse all construction that it has already illegally engaged in.

129.  The court should declare that the signatures of Reginald C. Govan, as Chief Counsel, did not bind the FAA and that of Rick Cole, as City Manager, did not bind the City as both were contrary to California law, *Davidson vs. Sup. Ct. (City of Mendota)* (1999) 70 Cal.App.4th 514, 528 as to Chief Counsel Reginald C. Govan and the FAA, and Santa Monica City Charter section 640 as to City Manager Rick Cole and the City; therefore the Decree is unenforceable, and void as the signatories did not possess the requisite authority under Section VIII, Paragraph D of the Decree.

130.   Notwithstanding the lack of authority of the signatories, the court should declare that the vote of Mayor Ted Winterer as invalid as a conflict of interest thus rendering the closed session report out by the City Attorney not a 4-3 vote but a 3-3 vote due to the violations of the Political Reform Act, Government Code section 1090, and 2 Cal. Code Regs section 18701(b).

131.   An actual controversy exists between the parties concerning the actions of both the FAA and City of Santa Monica related to the lawsuit and related Decree resulting from that lawsuit.

132.   A judicial determination resolving this actual controversy is necessary and appropriate at this time.

133.   This determination is necessary and proper because Respondents refuse to conform to the requirements of both State and Federal law

**SECOND CLAIM FOR RELIEF**
**WRIT OF MANDATE**

134.   Plaintiff incorporates by reference each allegation contained in the foregoing paragraphs of this Complaint and all Exhibits as if fully set forth herein.

135.   Plaintiff brings this cause of action as an affected party and as Private Attorney General under the Private Attorney General Doctrine in the public interest as of other persons similarly affected or situated.

136.   By the actions alleged above, Plaintiff believes that the Court should now order the FAA take steps to fully ensure that it complies with the APA and NEPA.

137.   By the actions alleged above, Plaintiff believes that the Court should now order the FAA take steps to fully ensure that the City of Santa Monica complies with all of its (FAA) regulations.

138.   By the actions alleged above, Plaintiff believes that the Court should now order the City of Santa Monica to comply with all of its environmental obligations, including but not limited to compliance with both NEPA and CEQA.

139.   By the actions alleged above, Plaintiff believes that the Court should now order the City of Santa Monica comply with all FAA regulations.

140.   By the actions alleged above, Plaintiff believes that the Court should now order the City of Santa Monica should now be ordered to comply with all State and local regulations and specifically those related to the City of Los Angeles portion of the airport.

141.   An actual controversy exists between the parties concerning the actions of both the FAA and City of Santa Monica related to the lawsuit and related Decree resulting from that lawsuit.

142.   A judicial determination resolving this actual controversy is necessary and appropriate at this time.

143.   This determination is necessary and proper because Respondents refuse to conform to the requirements of both State and Federal law

### THIRD CLAIM FOR RELIEF

### INJUNCTIVE RELIEF

144.   By Defendants continuing to engage in such actions as alleged above, Plaintiff (and those similarly situated) have been and will continue to be harmed by Defendants illegal actions related to the illegal and improper Decree entered into by the parties.

145.   Defendants have continually and consistently demonstrated that they know no legal bounds and that only by being enjoined by order of this Court, might the illegal improper actions by Defendants cease.

146.   In addition, if not enjoined by order of this Court, Defendant will continue to engage in such illegal in improper actions related to the invalid portions of both the 1984 Agreement and the Decree.

147.   Plaintiff does not have a plain, speedy, and adequate remedy in the ordinary course of law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

148.   A declaration that the lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* due to the failure of the City of Santa Monica to properly contract with outside counsel.

149.   A declaration that the lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* due to the failure of the City of Santa Monica to file an administrative claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before bringing such an action.

150.   A declaration that the lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* because the court lacked jurisdiction due to the failure of the City of Santa Monica to file an administrative claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before bringing such an action.

151.   A declaration that the Decree in lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* due to fact that the FAA filed in its obligation to assert and/or move to strike the Action due to the fact that City of Santa Monica to file an administrative claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675 before bringing such an action.

152.   A declaration that the Decree in lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* due to fact that the FAA lacked authority to enter in the Decree in

the first instance.

153.   A declaration that the Decree in lawsuit, 13-CV-08046-JFW-VBKx was invalid *ab initio* due to fact that the conflicted city council members voted approving the Decree and without such votes, the required approval would not have ratified by City Council.

154.   A declaration that the Court orders vacatur of the Decree in lawsuit, 13-CV-08046-JFW-VBKx pursuant to 5 U.S.C. § 706(2), because the FAA violated the APA.

155.   A declaration that the Court orders vacatur of the of the portions of the 1984 agreement wherein the FAA illegally and improperly released lands pursuant to 5 U.S.C. § 706(2), because the FAA violated the APA and also lacked proper authority to release such lands.

156.   The court should declare that the signatures of Reginald C. Govan, as Chief Counsel, did not bind the FAA and that of Rick Cole, as City Manager, did not bind the City as both were contrary to California law, *Davidson vs. Sup. Ct. (City of Mendota)* (1999) 70 Cal.App.4th 514, 528 as to Chief Counsel Reginald C. Govan and the FAA, and Santa Monica City Charter section 640 as to City Manager Rick Cole and the City; therefore the Decree is unenforceable, and void as the signatories did not possess the requisite authority under Section VIII, Paragraph D of the Decree.

157.   For a writ of mandate directing that the FAA take steps to fully ensure that it complies with the APA and NEPA.

158.   For a writ of mandate directing that the FAA fully ensure that the City of Santa Monica complies with all of its (FAA) regulations.

159.   For a writ of mandate directing that the City of Santa Monica to comply with all of its environmental obligations, including but not limited to compliance with both NEPA and CEQA and with all FAA regulations.

160.   For a writ of mandate directing that the City of Santa Monica should now comply with all State and local regulations and specifically those related to the City of Los Angeles portion of the airport.

161.   For a writ of mandate directing that will retain jurisdiction to ensure that the continues to complies with all (FAA) regulations and that the FAA will need to come to the court for further action in the event that the City is unwilling or unable to comply.

162.   For a writ of mandate directing that if in the City is unwilling to continue to operate the airport in compliance with its obligations that the FAA is to either take possession of Santa Monica Airport or find a party to take over operation of the airport.

163.   For preliminary injunctive relief as necessary the City of Santa Monica should now be enjoined from making its contradictory statements/assertions pursuant to the Doctrine of Equitable Estoppel and for a writ of mandate directing that the City now needs to make a choice whether it argue that it needs the fees or that it wants to have a shortened runway, but that it cannot do both.

164.   For preliminary and permanent injunctive relief as necessary and appropriate to cease any actions or activities related to the Decree, included but not limited to shortening of the runway and construction work related thereto, release of restrictions on Airport lands and/or closure of the airport in any way related to the Decree.

165.   For such further orders or declarations, as appropriate, declaring that the FAA and City of Santa Monica violated their ministerial obligations.

166.   For fees and costs.

167.   For Attorneys fees (if applicable)

168.   For Attorneys fees under Government Code 54960.5

169.   For such other and further relief as this Court deems just and appropriate.

Dated: March 16, 2018

By: _____

Barry Rosen, In Propria Persona

## Verification

I, Barry Rosen, declare:

I am acting In Propria Persona with respect to this action. I have read the foregoing Complaint for Declaratory and Injunctive Relief and know its contents. I am informed and believe that the matters stated therein are true and on that ground allege that the matters stated therein are true.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: March 16, 2018

                                         Barry Rosen