CHAD A. READLER
Principal Deputy
Assistant Attorney General

NICOLA T. HANNA
United States Attorney

JUDRY SUBAR
Assistant Branch Director

GARY FELDON,
(D.C. Bar No. 987142)
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Program Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel:  202.514.4686
Fax:  202.616.8470
Email: gary.d.feldon@usdoj.gov

Attorneys for Defendants
UNITED STATES and FEDERAL
AVIATION ADMINISTRATION

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN, Individually and as a Private Attorney General,<br><br>          Petitioner and Plaintiff,<br><br>          v.<br><br>UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION, AND CITY OF SANTA MONICA,<br><br>          Respondents and Defendants. | Case No.  2:17-cv-07727 PSG(JEMx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S (VERIFIED) THIRD AMENDED PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF ADMINISTRATIVE PROCEDURE ACT (APA), NATIONAL ENVIRONMENTAL POLICY ACT (NEPA), CALIFORNIA ENVIRONMENTAL QUALITY ACT (CEQA), CALIFORNIA STATE AERONAUTICS ACT, ET AL.<br><br>Hearing Noticed for 1:30 p.m. July 9, 2018.<br><br>Judge:  Honorable Philip S. Gutierrez |

# **Table of Contents**

BACKGROUND ...................................................................................................... 1

STANDARD OF REVIEW ..................................................................................... 5

ARGUMENT ............................................................................................................ 6

I.   Plaintiff Lacks Standing to Assert his Claims. ................................................. 6

   A.   Plaintiff Lacks Standing with Regard to the Expired 1984 Agreement. .. 8

   B.   Plaintiff Lacks Standing with Regard to the Airport Litigation, the Settlement, or the Consent Decree. ......................................................... 9

   C.   Plaintiff Lacks Standing with Regard to Compliance with, or Enforcement of, Federal Regulations. ..................................................... 11

II.  Plaintiff Fails to State Claims Upon Which Relief Could Be Granted .......... 12

   A.   Plaintiff's Collateral Attack on the Consent Decree Fails ..................... 12

   B.   Plaintiff's APA Claims Fail. .................................................................... 16

      1.   Plaintiff's APA Claim Regarding the 1984 Agreement is Barred by the Statute of Limitations. ............................................................... 17

      2.   The Settlement was Not a Final Agency Action and Litigation Decisions are Committed to the Discretion of the Department of Justice ........................................................................................... 17

      3.   Enforcement of FAA Regulations is Committed to the Agency's Discretion. .................................................................................... 19

      4.   The Consent Decree Is Not an Agency Action Subject to Review and Is Not Subject to NEPA. ....................................................... 22

CONCLUSION ....................................................................................................... 23

# **Table of Authorities**

**Cases**

*Ace Heating & Plumbing Co. v. Crane Co.*,
  453 F.2d 30 (3d Cir. 1971) ................................................................................ 13

*ACLU of Mass. v. U.S. Conference of Catholic Bishops*,
  705 F.3d 44 (1st Cir. 2013) ................................................................................. 9

*Am. Forest Res. Council v. Ashe*,
  946 F. Supp. 2d 1 (D.D.C. 2013) ..................................................................... 22

*Angela v. City of Albuquerque*,
  2016 U.S. Dist. LEXIS 191954 (D.N.M. Feb. 16, 2016) ................................... 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 5

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) .............................................................................. 5

*Beck v. United States Dep't of Commerce*,
  982 F.2d 1332 (9th Cir. 1992) ............................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 5

*Bennett v. Spear*,
  520 U.S. 154 (1997) .......................................................................................... 18

*Brooks v. Ga. State Bd. of Elections*,
  59 F.3d 1114 (11th Cir. 1995) ............................................................................ 9

*Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*,

   532 U.S. 598 (2001) ..........................................................................................18

*City of L.A. v. U.S. Dep't of Agric.*,

   950 F. Supp. 1005 (C.D. Cal. 1996).....................................................................8

*City of Santa Monica v. United States*,

   650 F. App'x 326 (9th Cir. 2016).............................................................11, 13

*Cunningham v. United States*,

   786 F.2d 1445 (9th Cir. 1986) ........................................................................6, 16

*Davidson v. Superior Ct.*,

   70 Cal. App. 4th 514 (Cal. Ct. App. 1999)........................................................15

*de Feyter v. FAA*,

   2011 U.S. Dist. LEXIS 31784 (D.N.H. Mar. 25, 2011)......................................21

*Fiberlight, LLC v. Amtrak*,

   81 F. Supp. 3d 93 (D.D.C. 2015).........................................................................8

*Griffin v. Green Tree Servicing, LLC*,

   166 F. Supp. 3d 1030 (C.D. Cal. 2015)...............................................................2

*Hanna v. Plumer*,

   380 U.S. 460 (1965) ...........................................................................................16

*Heckler v. Chaney*,

   470 U.S. 821 (1985) ...........................................................................................19

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,

   593 F.3d 923 (9th Cir. 2010) ..............................................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .......................................................................... 6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ..................................................................... 8

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................... 6, 9, 10

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ............................................................ 2

*Montara Water & Sanitary Dist. v. Cty. of San Mateo*,
   598 F. Supp. 2d 1070 (N.D. Cal. 2009) ..................................... 14, 15

*Morrison v. U.S. Dep't of Labor*,
   713 F. Supp. 664 (S.D.N.Y. 1989) .................................................. 19

*Mortera v. N. Am. Mortg. Co.*,
   172 F. Supp. 2d 1240 (N.D. Cal. 2001) ............................................ 7

*Native Ecosystems Council v. U.S. Forest Serv.*,
   428 F.3d 1233 (9th Cir. 2005) .................................................... 17, 22

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................... 15

*Oregon v. Legal Servs. Corp.*,
   552 F.3d 965 (9th Cir. 2009) ............................................................ 5

*Orion Sales, Inc. v. Emerson Radio Corp.*,
   148 F.3d 840 (7th Cir. 1998) ............................................................ 9

*Patel v. Parnes*,
   253 F.R.D. 531 (C.D. Cal. 2008)...............................................................2

*Pegasus Satellite TV, Inc. v. DirectTV, Inc.*,
   318 F. Supp. 2d 968 (C.D. Cal. 2004)......................................................8

*People for the Ethical Treatment of Animals, Inc. v. USDA*,
   7 F. Supp. 3d 1 (D.D.C. 2013).................................................................19

*Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urban Dev.*,
   175 F.3d 132 (2d Cir. 1999) ............................................................16, 18

*Pride v. Correa*,
   719 F.3d 1130 (9th Cir. 2013) ..................................................................5

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ..................................................................5

*SEC v. Randolph*,
   736 F.2d 525 (9th Cir. 1984) ............................................................12, 13

*Sierra Club v. Johnson*,
   614 F. Supp. 2d 998 (N.D. Cal. 2008)................................................20, 21

*Spencer Enters., Inv. v. United States*,
   345 F.3d 683 (9th Cir. 2003) ..................................................................19

*St. Clair v. City of Chico*,
   880 F.2d 199 (9th Cir. 1989) ....................................................................5

*Taylor v. U.S. Dep't of Labor*,
   440 F.3d 1 (1st Cir. 2005)........................................................................21

*Thomas v. Anchorage Equal Rights Comm'n*,

220 F.3d 1134 (9th Cir. 2000) ........................................................................ 10

*Toxic Injuries Corp. v. Safety-Kleen Corp.*,

57 F. Supp. 2d 947 (C.D. Cal. 1999) .................................................................. 7

*Turtle Island Restoration Network v. U.S. Dep't of Commerce*,

834 F. Supp. 2d 1004 (D. Haw. 2011) ............................................................. 22

*United States v. Oregon*,

913 F.2d 576 (9th Cir. 1990) ........................................................................... 12

*United States v. Park Place Assocs.*,

563 F.3d 907 (9th Cir. 2009) ............................................................................. 6

*United States v. Ritchie*,

342 F.3d 903 (9th Cir. 2003) ............................................................................. 2

*United States v. Walcott*,

972 F.2d 323 (11th Cir. 1992) ......................................................................... 19

*Williams v. Vukovich*,

720 F.2d 909 (6th Cir. 1983) ........................................................................... 12

*Williamson v. Mazda Motor of Am., Inc.*,

562 U.S. 323 (2011) ........................................................................................ 16

*Wind River Mining Corp. v. United States*,

946 F.2d 710 (9th Cir. 1991) ........................................................................... 17

**<u>Statutes</u>**

5 U.S.C. §§ 551-559 .......................................................................................... 7

5

5 U.S.C. § 701(a)(2) ................................................................17, 19

5 U.S.C. § 702 .................................................................................16

5 U.S.C. § 704 .......................................................................16, 17, 22

28 U.S.C. § 516..........................................................................16, 18

28 U.S.C. § 519..........................................................................16, 18

28 U.S.C. § 2401(a) .........................................................................17

28 U.S.C. § 2409a..............................................................................3

28 U.S.C. § 2675..............................................................................13

31 U.S.C. § 3730(b) ............................................................................7

42 U.S.C. §§ 4331-4370m-12..............................................................7

42 U.S.C. § 4332(C) ...................................................................22, 23

49 U.S.C. Chapter 471 .....................................................................20

49 U.S.C. § 47106(d).........................................................................21

49 U.S.C. § 47111(d).........................................................................21

49 U.S.C. § 47111(f).........................................................................20

49 U.S.C. §§ 47151-53 ...................................................................7, 14

California Code of Civil Procedure § 664.6 .........................................15

**Rules**

Federal Rule of Civil Procedure 12(b)(1)..........................................2, 5

Federal Rule of Civil Procedure 12(b)(6).........................................................2, 5

Fed. R. Civ. Evid. 201(b)(2).................................................................................2

**Regulations**

14 C.F.R. § 16.101.............................................................................................20

14 C.F.R. § 91.103.............................................................................................10

28 C.F.R. § 61.4.................................................................................................23

**Other Authorities**

Act of July 30, 1947,
    Pub. L. No. 80-289....................................................................................14

FAA Airport Compliance Manual,
    Order 5190.6B, FAA.gov (2009),
    https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/
    media/5190_6b.pdf...............................................................................14, 20

FAA, Assurances:  Airport Sponsors,
    (2014), https://www.faa.gov/airports/aip/grant_assurances/media/airport-
    sponsor-assurances-aip.pdf............................................................................20

Federal Aviation Act of 1958,
    Pub. L. No. 85-726, 72 Stat. 731 ..................................................................14

Department of Transportation Act,
    Pub. L. No. 89-670, 80 Stat. 931 (1966) ........................................................14

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS</u>

Defendants United States Government (United States) and the Federal Aviation Administration (FAA) (collectively, the Federal Defendants) file this memorandum in support of their motion to dismiss the (Verified) Third Amended Petition for Writ of Mandate and Complaint for Declaratory and Injunctive Relief for Violations of Administrative Procedure Act (APA), National Environmental Policy Act (NEPA), California Environmental Quality Act (CEQA), California State Aeronautics Act, Et Al. ("Third Amended Complaint" or "TAC") filed by Plaintiff Barry Rosen ("Plaintiff").

Plaintiff lacks standing to assert his claims against the Federal Defendants because he has not alleged any cognizable injury from their purportedly wrongful acts and because most of the relief he seeks would not redress the harms of which he complains.  Further, even if Plaintiff had standing, his claims would fail on their merits.  Plaintiff's allegations of governmental wrongdoing are premised on legal falsities, his Administrative Procedure Act (APA) challenge to a thirty-four year old, now-expired agreement is barred by the statute of limitations, and the remainder of his APA claims challenge acts that are not final agency actions, are committed to agency discretion, or both.

## BACKGROUND

Plaintiff's Third Amended Complaint challenges assorted agreements and interactions between the Federal Defendants and Co-Defendant City of Santa Monica ("City") concerning the Santa Monica Municipal Airport ("Airport") and the land on which it is located (the "Airport Property").

The Airport and Airport Property have a storied and convoluted history, most of which is irrelevant here.[1]  The key facts for purposes of this litigation are as follows:

The United States leased a portion of the Airport Property from the City as part of its effort to develop military aircraft during World War II.  *See* TAC ¶ 13.  The United States also acquired additional land to add to the Airport Property.  *See* Exhibit A (Quitclaim Deed).[2]  After the War, the United States, acting through the War Assets Administration, executed an agreement (the "Instrument of Transfer") conveying its interest in the leased portion of the Airport Property back to the City pursuant to the Surplus Property Act.  Exhibit B (Instrument of Transfer).  The following year, the United States also executed a quit claim deed transferring its interest in the after-acquired portion of the Airport Property.  *See* Ex. A.

_____

[1]  For a more complete recitation of this history, see Order Granting Defendants' Motion to Dismiss, *Santa Monica v. United States*, 2:13-cv-08046-JFW (VBKx) (C.D. Cal. Feb. 13, 2014), ECF No. 31, *rev'd on unrelated grounds by* 650 F. App'x 650 (2016).

[2]  Citations to exhibits in this motion refer only to the exhibits attached hereto.  Although a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is typically decided solely on the allegations in the complaint (including any documents attached to the complaint), "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The exhibits to this motion—legal documents conveying or recording property interests in the Airport Property and filings in other litigation concerning the Airport Property—fall in that category because they collectively set forth the basis of Plaintiff's claims, *see* TAC, and they are extensively referred to in the Third Amended Complaint. *See, e.g., id.* ¶¶ 13-19, 21-24, 45, 47-55, 61-63, 67-69, 79, 124, 126.  Moreover, public filings of transfer of interests in property and the existence and content of filings in other litigation (but not the truth of those contents) are subject to judicial notice because their accuracy cannot reasonably be questioned.  *See* Fed. R. Civ. Evid. 201(b)(2); *Griffin v. Green Tree Servicing, LLC*, 166 F. Supp. 3d 1030, 1040 (C.D. Cal. 2015) (property interests); *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) (litigation filings).  Finally, insofar as the Federal Defendants use the exhibits to this motion in support of their jurisdictional challenge under Federal Rule of Civil Procedure 12(b)(1), they are entitled to do so regardless of whether the exhibits could be considered under Rule 12(b)(6).  *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

The Instrument of Transfer required that "no property transferred by th[at] instrument shall be used, leased, sold, salvaged, or disposed of by the [City] for other than airport purposes without the written consent of the Civil Aeronautics Administrator." Ex. B at 6. If the City violated this requirement or any other provision of the Instrument of Transfer, the "rights transferred by th[at] instrument . . . shall at the option of the [United States] revert to the [United States] sixty (60) days following the date upon which demand to this effect is made in writing by the Civil Aeronautics Administrator or his successor in function," unless the City cured the breach in that time. *Id.*

Following a series of disputes among the City, the FAA, City residents, and Airport users, in January 1984, the City and the FAA entered into an agreement concerning the use of the Airport (the "1984 Agreement"). Exhibit C (1984 Agreement). In relevant part, the 1984 Agreement "resolve[d] all existing legal disputes among the parties," released a portion of the Airport Property from any restrictions still imposed by the 1948 Instrument of Transfer, instituted an agreed-upon plan for developing that land, and committed the City to operate the Airport through July 1, 2015. *Id.* at 1-9, 27.

In anticipation of the expiration of the 1984 Agreement, the City filed a lawsuit in 2013 against the United States, the FAA, and the FAA Administrator, *City of Santa Monica v. United States*, 2:13-cv-08046-JFW-VBK (C.D. Cal.) (the "Airport Litigation"). Exhibit D (Airport Litigation Complaint). The Airport Litigation asserted claims under the Quiet Title Act, 28 U.S.C. § 2409a, and the Fifth and Tenth Amendments, seeking declaratory relief that the City had full rights to use the Airport Property without restriction and injunctive relief preventing the Airport Litigation defendants from taking any contrary actions. *Id.* at 31-32.

The parties to the Airport Litigation agreed to resolve that case (as well as disputes being adjudicated in related proceedings) by entering into a Settlement

Agreement/Consent Decree between the Federal Aviation Administration and the City of Santa Monica (the "Settlement").  Exhibit E (Settlement) at 3-4.  Under the Settlement, (1) the FAA agreed to permit the City to shorten the Airport's runway subject to "compl[iance] with its state and federal environmental requirements," (2) the City was obligated to operate the Airport in accordance with certain FAA regulations and enumerated grant obligations through the expiration of the Settlement on December 31, 2028, and (3) the FAA agreed to release the Airport Property from all rights and restrictions other than those imposed by the Settlement or by statute. *See id.* at 3-7.  Critically, the Settlement was to be embodied in a consent decree, and the Settlement would "be of no force and effect and [could] not be used by either Party for any purpose whatsoever" if the court did not enter the requested consent decree.  *Id.* at 4.

On February 1, 2017, Judge John F. Walter of this Court issued an order embodying the Settlement terms in a consent decree (the "Consent Decree"). Exhibit F (Consent Decree).  In that order, Judge Walter specifically stated that he had "reviewed the Settlement Agreement . . . and conclude[d] that" it was "'not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned.'"  *Id.* (citation omitted).  Judge Walter also denied motions by two resident groups for permission to intervene and to object to the Settlement.  *Id.*

Roughly a year after the Consent Decree took effect, Plaintiff filed this lawsuit.  *See* TAC.  Plaintiff purports to bring claims both as "a beneficially interested party" by virtue of being "a licensed pilot, a user of Santa Monica Airport . . . and [the] owner of an aircraft based at the" Airport as well "as a Private Attorney General under the Private Attorney General Doctrine in the public interest for the benefit of other persons similarly affected or situated." *Id.* ¶ 1; *see also id.* ¶¶ 9-10, 118, 135.  In those capacities, he challenges the 1984 Agreement, the Airport Litigation, the Settlement, the Consent Decree, the City's shortening of

4

the Airport runway, and the Federal Defendants' purported failure to enforce FAA regulations against the City.  *See generally id.* ¶¶ 30-147.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) requires dismissal when the plaintiff fails to meet his or her burden of establishing subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989), including when a plaintiff fails to establish the elements of standing, *Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009).  When reviewing a facial challenge under Rule 12(b)(1), courts apply the same standard to jurisdictional allegations that they apply to factual allegations under Federal Rule of Civil Procedure 12(b)(6).  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

Rule 12(b)(6) requires dismissal when the plaintiff fails to make allegations sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "claim has facial plausibility" when the remaining "well-pleaded factual allegations" allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[C]onclusory statements" and "bare assertions" of fact "are not entitled to the presumption of truth" and must be "discount[ed]" prior to "determining whether a claim is plausible."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## ARGUMENT

The Federal Defendants are entitled to dismissal of the claims against them in the Third Amended Complaint both because Plaintiff lacks standing to assert those claims and because his claims lack merit.[3]

## I.   Plaintiff Lacks Standing to Assert his Claims.

"Federal courts are courts of limited jurisdiction, . . . possess[ing] only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted).  A constitutional prerequisite for any federal lawsuit is that the plaintiff have standing to assert the claims brought. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992).  The three "irreducible constitutional minimum" requirements for standing are that (1) the plaintiff "suffer[s] an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not conjectural or hypothetical," (2) "the injury has to be 'fairly traceable to the challenged action of the defendant,'" and (3) it is likely "that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560 (alterations and internal citations omitted).

---

[3] The Federal Defendants address only the claims against them, not those directed solely to the actions of the City or seeking relief only against the City.  *See* TAC ¶¶ 30-33, 83-110, 159-160, 163.  To the extent Plaintiff intended to bring these claims against the Federal Defendants, they would fail because those claims do not allege any wrongful actions by the Federal Defendants.  Moreover, the Federal Defendants' sovereign immunity would bar any such claims.  *See Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986).  Absent a waiver, sovereign immunity bars all claims against the federal government.  *See id.*  "[T]he party asserting a claim against the United States . . . has the burden of 'demonstrating an unequivocal waiver of immunity.'" *United States v. Park Place Assocs.*, 563 F.3d 907, 924 (9th Cir. 2009) (quoting *Cunningham*, 786 F.2d at 1446).  Plaintiff does not identify any federal statute that would waive the Federal Defendants' immunity to claims under state and/or local laws.  *See generally* TAC.

6

In his Third Amended Complaint, Plaintiff's claims against the Federal Defendants challenge the validity of the 1984 Agreement, the Airport Litigation, the Settlement, the Consent Decree, and the Federal Defendants' purported failure to comply with and enforce applicable federal regulations. *See generally* TAC at ¶¶ 45-102, 111-116. As relief, he asks the Court to declare the 1984 Agreement, the Airport Litigation, the Settlement, and the Consent Decree invalid, to require the Federal Defendants to comply with and enforce applicable federal regulations, and to award fees and costs. *Id.* ¶¶ 119-127, 129-130, 136-137, 148-158, 161, 164-165. However, Plaintiff lacks standing to assert his claims or obtain the relief he seeks because he cannot show either injuries in fact or redressability.

As an initial matter, Plaintiff's reference to himself as a "private attorney general" does not change this analysis. *See* TAC ¶¶ 1, 10, 118, 135. A statute may provide that a litigant can bring a claim in the capacity of a private attorney general. *See, e.g.*, 31 U.S.C. § 3730(b) ("A person may bring a civil action for a violation of [the False Claims Act] for the person and for the United States Government"). However, none of the federal statutes upon which Plaintiff bases his claims does so. *See generally* 5 U.S.C. §§ 551-559; 42 U.S.C. §§ 4331-4370m-12; 49 U.S.C. §§ 47151-53. Moreover, Plaintiff's self-description as a private attorney general—a term that means nothing absent a statute granting such authority, *see Angela v. City of Albuquerque*, 1:15-CV-01048 WJ-LF, 2016 U.S. Dist. LEXIS 191954, at *9 (D.N.M. Feb. 16, 2016)—does not confer constitutional standing. *See Mortera v. N. Am. Mortg. Co.*, 172 F. Supp. 2d 1240, 1243-44 (N.D. Cal. 2001); *Toxic Injuries Corp. v. Safety-Kleen Corp.*, 57 F. Supp. 2d 947, 954-55 (C.D. Cal. 1999). Rather, statutes that authorize private attorneys general provide for monetary awards that can constitute a concrete interest for standing purposes. *See Mortera*, 172 F. Supp. 2d at 1244. Equitable relief "on behalf of the public" plus "attorney's fees and costs . . . do not constitute a 'bounty'" that confers standing. *Id.* But such relief is all that Plaintiff seeks here. TAC ¶¶ 148-169.

7

Thus, Plaintiff's constitutional standing depends entirely on whether he has standing in his own right.[4]

A. <u>Plaintiff Lacks Standing with Regard to the Expired 1984 Agreement.</u>

Plaintiff alleges that the Federal Defendants lacked authority to enter in the 1984 Agreement.  TAC ¶¶ 45-50.  The effect of the Agreement that Plaintiff challenges is that it permitted the City to use certain portions of the Airport Property for non-aviation purposes.  *Id.*  On this basis, he asks the Court to invalidate the portions of the 1984 Agreement allowing the City to repurpose the land.  *Id.* ¶ 155.  However, Plaintiff cannot show either an injury in fact or redressability with regard to the 1984 Agreement.

Plaintiff has not alleged an injury in fact arising from the 1984 Agreement. Nowhere in his Third Amended Complaint does Plaintiff allege that the release of the property harmed him.  *See generally id.* ¶¶ 19-23, 45-50.  He alleges only that he uses the Airport now, not that he did so before 1984 or that the release of the portion of the Airport Property in 1984 affected him in any way.  *Id.* ¶¶ 1, 9. Moreover, Plaintiff does not allege that he is somehow a third party beneficiary of the Agreement who would have standing to enforce or invalidate it.  *See generally* TAC; *Pegasus Satellite TV, Inc. v. DirectTV, Inc.*, 318 F. Supp. 2d 968, 977 (C.D. Cal. 2004) (dismissing a claim for lack of prudential standing after finding that the plaintiff was not a third party beneficiary); *see also Fiberlight, LLC v. Amtrak*, 81

---

[4]  Indeed, to bring an APA claim (including an APA claim asserting a NEPA violation), Plaintiff would have to meet the zone of interest requirement in addition to constitutional standing requirements.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386-89 (2014); *City of L.A. v. U.S. Dep't of Agric.*, 950 F. Supp. 1005, 1011-12 (C.D. Cal. 1996). The zone of interest test requires that APA plaintiffs have an "injury inflicted by agency action . . . to an interest arguably within the zone of interest sought to be protected by the statute that the agency allegedly violated."  *Beck v. United States Dep't of Commerce*, 982 F.2d 1332, 1338 (9th Cir. 1992).  Plaintiff cannot meet this requirement because, among other reasons, he has not alleged any injury, much less one secured by the substantive statutes upon which he bases his claims.

8

F. Supp. 3d 93, 105 (D.D.C. 2015) ("One such prudential [standing] requirement is that a party cannot sue to enforce or challenge the terms of a contract to which it is neither a party nor a third-party beneficiary."). Without an allegation of harm, Plaintiff lacks standing to assert this claim. *See Lujan*, 504 U.S. at 560.

The relief Plaintiff seeks would also not redress any purported harm. The 1984 Agreement expired in 2015, meaning that any challenges to it would not yield redress for any harm that Plaintiff might have faced. *See ACLU of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (affirming dismissal for mootness when plaintiff sought equitable relief against expired agreement); *Orion Sales, Inc. v. Emerson Radio Corp.*, 148 F.3d 840, 842 (7th Cir. 1998) (same); *Brooks v. Ga. State Bd. of Elections*, 59 F.3d 1114, 1120 (11th Cir. 1995) (same). The property released from aviation uses was repurposed almost thirty-five years ago, and the declaratory relief Plaintiff seeks would not require it to be restored to its earlier uses. *See generally* TAC ¶¶ 124, 126, 155. Thus, no injury Plaintiff could allege would be redressed by his claim.

## B. Plaintiff Lacks Standing with Regard to the Airport Litigation, the Settlement, or the Consent Decree.

Just as with the 1984 Agreement, Plaintiff lacks standing to challenge the Airport Litigation, the resulting Settlement, or the Consent Decree that determined the Co-Defendants' respective rights because he lacks an injury in fact and because the relief he seeks would not redress his purported injury.

Plaintiff lacks an injury in fact because he does not identify any way in which he has been harmed by the Airport Litigation, the Settlement, or the Consent Decree. Plaintiff's only stated personal interest in the Airport is that he owns an aircraft based at the Airport and uses it when he flies. TAC ¶¶ 1, 9. Plaintiff does not allege that his usage of the Airport has been affected by the Settlement. *See generally id.* ¶¶ 1-147. Although the Consent Decree implementing the Settlement gives the City the right to close the Airport after 2028, any injury based on that

closure is far too distant and speculative to confer standing on Plaintiff.  *See Lujan*, 504 U.S. at 560.  At some unidentifiable date at least a decade from now, the City <u>may</u> choose to exercise its right to close the Airport, at which time Plaintiff <u>may</u> still be using the Airport.[5]  The only current impact Plaintiff alleges is that some pilots flying with outdated charts—but not Plaintiff—might be unaware that the Airport runway has been shortened pursuant to the Consent Decree, which could result in safety issues and air traffic congestion.[6]  TAC ¶¶ 64-65.  However, Plaintiff does not allege that he faces any injury from the shortened runway.  *See id.*  Rather, his allegations related solely to issues possibly faced by other pilots and delays and costs at other airports.  *Id.*  Thus, Plaintiff lacks the kind of concrete and particularized and actual or imminent injury required for this Court to adjudicate his claims.

Plaintiff's supposed injuries would also not be redressed by invalidating the Airport Litigation (including the Consent Decree entered in that case) or the Settlement.  Declaring the Airport Litigation invalid, as Plaintiff asks, would not require the City to re-lengthen the Airport runway or require the City to operate the Airport in perpetuity.  *See* TAC ¶¶ 148-53, 156.  Rather, invalidating the Airport Litigation would restore the Co-Defendants to their pre-litigation status quo.  Under that status quo, the Federal Defendants contended that they had the option to

---

[5]  Alternatively, the Court could dismiss for lack of prudential jurisdiction on this basis because Plaintiff's claims are not yet ripe.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (*en banc*).

[6]  Notably, FAA regulations require all pilots "before beginning a flight" to "become familiar with" "the runway lengths at airports of intended use," which can be accomplished by reference to charts or any one of several other publicly available resources.  14 C.F.R. § 91.103.  Thus, the only pilots even potentially harmed by outdated charts are those that fail to comply with applicable regulations before flying.

exercise a right of reverter if the City were to stop using the Airport Property for aviation purposes, and the City contended that any rights subject to reverter had expired. *See City of Santa Monica v. United States*, 650 F. App'x 326, 327-28 (9th Cir. 2016). However, exercising the right of reverter was always "at the option of" the United States. Ex. B at 6. Invalidating the Airport Litigation and/or the Consent Decree would not require the United States to assert its reversionary interest or require the City to lengthen the runway, and so would not prevent any harms to Plaintiff relating to the Airport Litigation and the Settlement.[7] Thus, Plaintiff cannot meet the constitutional prerequisite of redressability for the Court to consider his challenges.

### C. Plaintiff Lacks Standing with Regard to Compliance with, or Enforcement of, Federal Regulations.

Finally, Plaintiff lacks any injury that would give him standing to require either Co-Defendant to comply with federal regulations or to mandate that the Federal Defendants enforce federal regulations against the City. Plaintiff asks this Court to direct the FAA to (1) ensure the City's compliance with FAA regulations and (2) itself comply with the APA and the NEPA. TAC ¶¶ 116, 137, 139, 158, 159, 161. Although Plaintiff makes vague allegations of assorted alleged regulatory violations by the Co-Defendants, *id.* ¶¶ 111-116, Plaintiff does not make any allegations about how he was harmed by those supposed violations, *see generally id.* Thus, he has not alleged an injury in fact that would give him standing to pursue these claims.

---

[7] Plaintiff's claims specific to the Settlement would not redress his claimed injuries for an additional reason. *See* TAC ¶ 156; *see also id.* ¶¶ 27, 80. The Settlement itself had "no force and effect" until Judge Walter of this Court entered it as a consent decree, and that consent decree would continue to bind the parties even if the Settlement itself were invalidated. Ex. E at 4. The only relief that would affect the Co-Defendants' respective rights would be invalidating the Consent Decree.

## II.     Plaintiff Fails to State Claims Upon Which Relief Could Be Granted.

Plaintiff brings two types of claims with regard to the Federal Defendants. First, he asserts that the Airport Litigation and the resulting Consent Decree were invalid for various reasons.  TAC ¶¶ 34-44, 51-55.  Second, he asserts that the Federal Defendants engaged in various improper conduct, including by entering the Settlement Agreement.  *Id.* ¶¶ 56-82, 111-116.  These claims implicate different types of review and are addressed in turn below.

### A.  Plaintiff's Collateral Attack on the Consent Decree Fails.

The first type of claim Plaintiff asserts is that the Consent Decree is invalid because of various deficiencies in the process by which it was reached.  TAC ¶¶ 34-44, 51-82, 97-101.  Specifically, Plaintiff alleges that the parties lacked the authority to litigate the Airport Litigation or sign the Settlement and that this Court lacked jurisdiction to enter the Consent Decree.  *See id.*  Plaintiff's claims, however, are built on false legal premises and come nowhere near to meeting the extraordinary burden necessary to invalidate a consent decree.

As long as a consent "decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid and [an] objecting party 'has a heavy burden of demonstrating that the decree is unreasonable.'"[8]  *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (quoting *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)).  This burden is particularly heavy here because reviewing "courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984).  Not only that but "'[g]reat weight is accorded [to the approving judge's] views because he is exposed to the litigants, and their

---

[8]  Plaintiff does not allege anywhere in the Third Amended Complaint that the Settlement was the product of anything but good faith, arms-length negotiations.  *See generally* TAC ¶¶ 51-82.

12

strategies, positions and proofs.  He is aware of the expense and possible legal bars to success.  Simply stated, he is on the firing line and can evaluate the action accordingly.'"  *Id.* at 626 (quoting *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 34 (3d Cir. 1971)).

First, Plaintiff contends that the Consent Decree is invalid because this Court did not have jurisdiction over the Airport Litigation as a result of the City's purported failure to exhaust its administrative remedies under the Federal Tort Claims Act.  TAC ¶¶ 34-39 (citing 28 U.S.C. § 2675); *see also id.* ¶¶ 40-44 (alleging that the United States was required to move to dismiss on that basis).  However, 28 U.S.C. § 2675 applies only to a "claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  The City's claims sought only equitable relief, were based on disputed property rights (but not property loss), and did not allege any negligent or wrongful conduct by a particular government employee.  *See City of Santa Monica*, 650 F. App'x at 327-28.  Thus, requirements of the Federal Tort Claims Act did not apply and Plaintiff's contentions lack merit.

Second, Plaintiff contends that the Consent Decree is invalid because the FAA lacked the authority to release the City from any obligations under the Instrument of Transfer and especially from the obligation to continue to operate the Airport.  TAC, ¶¶ 51-55.  Specifically, Plaintiff asserts that the General Services Administration, not the FAA, had the authority to release the City from its obligations to operate the Airport Property for aviation uses.  *Id.* at 2, ¶¶ 13, 51-

52.[9]  This argument fails because the Instrument of Transfer gives the right to exercise the reverter clause to "the Civil Aeronautics Administrator or his successor in function."  Ex. B at 6.  Contrary to Plaintiff's assertion, the FAA Administrator is the statutory successor in function to the Civil Aeronautics Administrator.  TAC ¶ 46.  Congress enacted this change when it amended the Surplus Property Act to "strik[e] the words 'Administrator of Civil Aeronautics' wherever they appear [in that statute] and inserting in lieu thereof the words 'Administrator of the Federal Aviation Agency."  Federal Aviation Act of 1958, Pub. L. No. 85-726, § 1402(c), 72 Stat. 731, 807; *see also* Department of Transportation Act, Pub. L. No. 89-670, §§ 3(e)(1), § 6(c)(1), 9(f), 80 Stat. 931, 932, 938, 945 (1966) (replacing Federal Aviation Agency with FAA).  "As the successor to the Civil Aeronautics Administration, the FAA is vested with 'the sole responsibility for determining . . . the terms, conditions, reservations, and restrictions upon or subject to which surplus property is disposed of pursuant to' the Surplus Property Act."  *Montara Water & Sanitary Dist. v. Cty. of San Mateo*, 598 F. Supp. 2d 1070, 1089 (N.D. Cal. 2009) (quoting Act of July 30, 1947, Pub. L. No. 80-289, § 13(g)(4)).  The FAA therefore need not obtain another agency's permission before committing not to exercise the right of reverter contained in the Instrument of Transfer.

Third, Plaintiff contends that the Consent Decree was unreasonable because the FAA did not receive consideration for its release of obligations under the

---

[9]  Plaintiff also asserts in passing and without any citation to legal authority that only Congress can permit closure of an airport. TAC ¶¶ 51-52. The Federal Defendants can find no support for this proposition. Airports receiving federal grant funds can be closed with the approval of the FAA Associate Administrator for Airports. *See* FAA Airport Compliance Manual, Order 5190.6B, § 22.20, FAA.gov (2009), https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/media/5190_6b.pdf. Similarly, Congress need not approve the release of property conveyed under the Surplus Property Act even when the instrument of transfer does not reserve that right exclusively to the FAA. *See* 49 U.S.C. § 47151.

14

Consent Decree.  TAC ¶¶ 47, 54.  Again, the FAA need not impose any particular condition on its release of obligations under the Instrument of Transfer.  *See Montara Water & Sanitary Dist.*, 598 F. Supp. 2d at 1089.  Not only that, but the Settlement provided consideration to the federal government.  Specifically, the City released its legal claim that it has no existing obligations to operate the Airport and agreed to continue operating the Airport through 2028.  If the City had prevailed in the now-settled litigation, it would have been free to close the Airport abruptly, with significant disruption of civil aviation.  To claim that the FAA did not receive any consideration, Plaintiff would have to presume that the City's release of claims was worthless because those claims had no merit.  However, in evaluating the reasonableness of a consent decree, a court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, Plaintiff fails even to allege specifically that the City could not have prevailed on the merits of its Quiet Title Act claim.  Thus, this contention fails as well.

Fourth, Plaintiff contends that the Settlement that led to the Consent Decree was invalid because the FAA Chief Counsel is purportedly "not the authorized signatory of the FAA and as Chief Counsel, under California law, did not bind the FAA."  TAC ¶ 80, *see also id.* ¶ 79.  In support of this contention, he cites to a Court of Appeal of California case discussing California Code of Civil Procedure § 664.6's requirement that the litigants sign a settlement agreement before a California court can enter it as a judgment.  *Id.* ¶ 129 (citing *Davidson v. Superior Ct.*, 70 Cal. App. 4th 514, 528 (Cal. Ct. App. 1999). This contention ignores two critical facts.  Initially, the Federal Rules of Civil Procedure govern all actions before federal courts, not the procedural rules of the courts of a federal court's

forum state.  *See Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965).  Further, the Settlement was also signed by an authorized representative of the U.S. Department of Justice, which has authority to settle all claims against the United States and its agencies, including the FAA.  28 U.S.C. §§ 516, 519; *see also Presidential Gardens Assocs. v. United States ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 141 n.1 (2d Cir. 1999) (stating that the Attorney General has plenary authority to settle cases to which the United States is a party).  Even if the state authority on which Plaintiff relies did apply here (and it does not), that authority would be preempted by the federal statutes conferring settlement authority on the Department of Justice.  *See generally Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011).

### B. Plaintiff's APA Claims Fail.

All of Plaintiff's claims alleging that the Federal Defendants engaged in misconduct must be considered under the rubric of the APA.  "A party may bring a cause of action against the United States [or one of its agencies] only to the extent it has waived its sovereign immunity."  *Cunningham v. United States*, 786 F.2d 1445, 1446 (9th Cir. 1986).  The APA provides such a waiver for actions in federal court that "seek[] relief other than monetary damages and stat[e] a claim that an agency . . . acted or failed to act in an official capacity or under color of legal authority" when no other adequate remedy exists.  5 U.S.C. §§ 702, 704.  These conditions are met here because Plaintiff seeks only equitable relief against the Federal Defendants, TAC ¶¶ 117-169, and concedes that no other adequate remedy exists, *id.* ¶ 147.[10]

---

[10]  Although some federal statutes provide private causes of action that would exempt them from the APA's reach, NEPA—the only federal statute cited by Plaintiff as the basis of a claim other

16

Plaintiff's allegations, however, do not state claims under the APA.  The APA allows for judicial review only of "final agency action[s]," 5 U.S.C. § 704, that are not (1) statutorily precluded from judicial review or (2) "committed to agency discretion by law," *id.* § 701(a)(2).  His challenge to the 1984 Agreement was barred by the APA's statute of limitations decades ago, and the remaining actions he challenges are all non-final agency actions, committed to agency discretion by law, or both.  The Court should therefore dismiss his claims on their merits.

> 1. *Plaintiff's APA Claim Regarding the 1984 Agreement is Barred by the Statute of Limitations.*

Although the APA does not specify a statute of limitations, 28 U.S.C. § 2401(a)'s six-year statute of limitations for civil actions against the United States applies to APA claims.  *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 930 (9th Cir. 2010); *see Wind River Mining Corp. v. United States*, 946 F.2d 710, 712-14 (9th Cir. 1991).  Plaintiff alleges that the FAA lacked authority to enter into the 1984 Agreement.  TAC ¶¶ 45-50.  Thus, Plaintiff would have had to file a claim by January 31, 1990, to state a valid challenge to the 1984 Agreement.  Ex. C at 27.  He is 28 years too late.  The Court should therefore dismiss his claim.

> 2. *The Settlement was Not a Final Agency Action and Litigation Decisions are Committed to the Discretion of the Department of Justice.*

Plaintiff challenges the Settlement under the APA by arguing that the Federal Defendants' decision to enter the agreement was arbitrary and capricious.  TAC ¶¶ 56-69.  That claim fails, however, because the Settlement is not a final

---

than the APA—does not.  *See Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).  As a result, "agency decisions allegedly violating . . . NEPA are reviewed under the Administrative Procedure Act."  *Id.*

agency action that could be subject to APA review.  Moreover, the Department of Justice's decision to settle a case is committed to the agency's discretion, so is not subject to APA review for that reason as well.

The Settlement is not subject to APA review because it was not a final agency action.  To be final, an "action must mark the 'consummation' of the agency's decisionmaking process," and "must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations omitted).  The Settlement, however, did not determine rights or obligations or give rise to legal consequences.  To the contrary, the Settlement specified that it would have "no force and effect" if the district court declined to enter the consent decree.  Ex. E at 4.  The action that gave rise to legal consequences was the Consent Decree, which another judge of this Court independently determined was "fair, reasonable and adequate to all concerned."  Ex. F; *see also Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 n.7 (2001) (contrasting private settlement agreements with "the judicial approval and oversight involved in consent decrees").  Because the Consent Decree determined the legal rights and obligations of the Co-Defendants, not the Settlement, Plaintiff cannot challenge the Settlement as a final agency action under the APA.

The decision to enter into the Settlement is also not subject to APA review because it was committed by law to the discretion of the Department of Justice.  Congress vested the Attorney General, acting through the officers of the Department of Justice, with the sole and absolute authority to conduct and supervise litigation in which the United States or one of its agencies is a party.  28 U.S.C. §§ 516, 519.  "The authority of the Attorney General to supervise litigation to which the United States is a party is . . . a plenary authority that embraces all aspects of litigation, including settlement." *Presidential Gardens Assocs.*, 175 F.3d at 141 n.1.  "[T]his discretionary authority of the Justice Department is

absolute," so "litigation decisions . . . are not reviewable under the Administrative Procedure Act." *Morrison v. U.S. Dep't of Labor*, 713 F. Supp. 664, 669 (S.D.N.Y. 1989); *see also United States v. Walcott*, 972 F.2d 323, 328 (11th Cir. 1992).  This further precludes any APA review of the Settlement by this Court.

> 3.  *Enforcement of FAA Regulations is Committed to the Agency's Discretion.*

Despite the FAA's history of vigorous enforcement of its regulations with regard to the Airport,[11] Plaintiff nonetheless challenges the Federal Defendants' purported failure to enforce federal regulations against the City.  TAC ¶¶ 103-108.  However a "classic example of action committed to agency discretion is an agency's decision whether or not to take an enforcement action." *People for the Ethical Treatment of Animals, Inc. v. USDA*, 7 F. Supp. 3d 1, 10-11 (D.D.C. 2013), *aff'd on other grounds* 797 F.3d 1087 (D.C. Cir. 2015).  "[A]n agency's decision not to take enforcement action should be presumed immune from judicial review under [5 U.S.C.] § 701(a)(2)." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).  "[T]he presumption may be rebutted [only] where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers," *id.* at 832-33, or such standards are supplied by agency regulations or practices, *Spencer Enters., Inv. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003)).  Without a "meaningful standard against which to judge the agency's exercise of discretion," courts cannot review that discretion under the APA. *Heckler*, 470 U.S. at 830.

---

[11]  *See, e.g.*, *In re Compliance with Fed. Obligations by the City of Santa Monica*, FAA Docket No. 16-16-13, Notice of Investigation (Sept. 26, 2016); *In re City of Santa Monica*, FAA Docket No. 16-02-08, Director's Determination (May 27, 2008); *Nat'l Bus. Aircraft Ass'n v. City of Santa Monica*, FAA Docket No. 16-14-04, Director's Determination (Dec. 4, 2015).

Here, the FAA's enforcement provisions do not dictate when the agency must undertake enforcement actions.  Without providing much in the way of specifics, Plaintiff alleges that the City has engaged in various practices that violate federal grant obligations to "make [an] airport available as an airport for public use on reasonable terms and without unjust discrimination to all types, kinds and classes of aeronautical activities" and to expend "revenues generated by the airport" to be spent on aviation purposes.  FAA, Assurances:  Airport Sponsors, §§ C.22, C.25 (2014);[12] *see* TAC ¶¶ 111, 113-114 (alleging actions making the Airport unavailable for use on reasonable terms), ¶¶ 112, 115 (alleging diversion of federal grant funds to non-aviation purposes).  However, Congress has granted the FAA the discretion to decide whether and when to enforce these grant assurances.[13]

"[T]he customary meaning of the word *may* . . . is permissive" and a court "should take Congress at its word when it uses *may* and treat it as permissive when, as here, the legislative history is not clearly to the contrary."  *Sierra Club v. Johnson*, 614 F. Supp. 2d 998, 1003 (N.D. Cal. 2008).  Under 49 U.S.C. § 47111(f), "[f]or any violation of [49 U.S.C. Chapter 471] or any grant assurance made under [that] chapter, the Secretary [of Transportation] <u>may</u> apply to the

---

[12] *Available at* https://www.faa.gov/airports/aip/grant_assurances/media/airport-sponsor-assurances-aip.pdf.

[13] Congress's intent is the only relevant consideration here because the FAA has not limited its own discretion through regulation or agency practice.  *See generally* FAA Airport Compliance Manual, Order 5190.6B, §§ 2.4, 5.16, FAA.gov (2009), https://www.faa.gov/airports/resources/publications/orders/compliance_5190_6/media/5190_6b.pdf.  To the contrary, the FAA's own regulations also use permissive language that reflect the agency's discretion.  *See, e.g.*, 14 C.F.R. § 16.101 ("The FAA <u>may</u> initiate its own investigation [of grant assurance violations]" (emphasis added)).

[proper] district court . . . for enforcement." (emphasis added).[14]  The use of the word "may" here is dispositive because nothing in the legislative history clearly indicates that Congress intended to constrain the agency's discretion.  *See Sierra Club*, 614 F. Supp. 2d at 1002.  Indeed, "[n]othing in the FAA Act supplies a 'meaningful standard . . . against which to judge the agency's exercise of discretion' in deciding which regulatory violations to penalize and which not to penalize.'"  *de Feyter v. FAA*, 10-cv-358-JL, 2011 U.S. Dist. LEXIS 31784, at *15 (D.N.H. Mar. 25, 2011) (quoting *Taylor v. U.S. Dep't of Labor*, 440 F.3d 1, 9 (1st Cir. 2005) (alterations in original)).

   Although it does not appear that any court has looked specifically to the failure to bring an enforcement action under § 47111(f), another court reached this conclusion in evaluating another FAA regulatory enforcement statute.  *See id.* at *13-14.  Similar to § 47111(f), that statute stated that the "the 'FAA <u>may</u> impose a civil penalty'" for certain violations and "that the FAA '<u>may</u>' bring a civil action seeking to impose" a penalty over a designated amount for such violations.  *Id.* (emphasis in original).  Based on this language, the court concluded that the FAA's decision not to bring an enforcement action was not subject to APA review.  *Id.* at *13-15.  The structure of the FAA Act and the use of "may" is equally applicable here, so the FAA's decision not to enforce bring an enforcement action under § 47111(f) is likewise unreviewable.

---

[14]  The same permissive language is used in statutes providing the FAA with other means to coerce compliance with grant assurances.  *See, e.g.*, 49 U.S.C. §§ 47111(d), 47106(d) (providing that "[t]he Secretary [of Transportation] <u>may</u> withhold a payment under a grant agreement" and "<u>may</u> withhold approval of an application" for certain types of funds when statutory preconditions are met).

4.   *The Consent Decree Is Not an Agency Action Subject to Review and Is Not Subject to NEPA.*

The APA does not permit Plaintiff to invoke this Court's jurisdiction to evaluate the propriety of the Consent Decree.  *See* TAC ¶¶ 60, 62, 64-65, 68, 69. Again, the provision of the APA under which Plaintiff brings his claims applies only to final agency actions.  5 U.S.C. § 704.  "[A] consent decree is a judicial act, rather than an agency act.  Accordingly, the APA is not applicable to [a] . . . consent decree."  *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004, 1013-14 (D. Haw. 2011), *aff'd* 672 F.3d 1160 (9th Cir. 2012); *see also Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 26 (D.D.C. 2013), *judgment entered*, 301 F.R.D. 14 (D.D.C. 2014), *and aff'd* 601 F. App'x 1 (D.C. Cir. 2015) (collecting cases for the proposition that consent decrees need not comply with APA notice and comment requirements).  Plaintiff's APA challenge to the Consent Decree therefore fails.

Plaintiff's NEPA challenge would fail for similar reasons.  *See* TAC ¶¶ 70-77.  NEPA does not provide for a private right of action, so challenges under that statute are reviewed under the APA.  *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005).  Thus, the deficiencies of Plaintiff's APA claims generally apply to his NEPA claim specifically.  Further, an obligation to conduct an environmental analysis is triggered only by "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(C).  "'Major federal action' does not include action taken by the Department of Justice within the framework of . . . civil or criminal litigation, including but not limited to the submission of consent or settlement agreements."

28 C.F.R. § 61.4.  Accordingly, even if there were an appropriate cause of action to assert NEPA violations, Plaintiff's NEPA claim would fail.[15]

## CONCLUSION

For the foregoing reasons, the Court should grant the Federal Defendants' motion and dismiss the Third Amended Complaint.

---

[15] To the extent Plaintiff asserts that shortening the Airport runway, rather than the Consent Decree, triggers NEPA, his claim would fail because the runway modifications are not federal actions.  *See* 42 U.S.C. § 4332(C).  The City, not the Federal Defendants, shortened the Airport runway.  Moreover, the Settlement and Consent Decree specifically provide that the City is "responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at" the Airport, "includ[ing] the cost of conducting any necessary environmental studies or other requirements under the National Environmental Policy Act."  Ex. E at 5.

Dated: April 23, 2018

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General

NICOLA T. HANNA
United States Attorney

JUDRY SUBAR
Assistant Branch Director

*/s/ Gary D. Feldon*
GARY FELDON,
(D.C. Bar No. 987142)
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Program Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Tel:   202.514.4686
Fax:   202.616.8470
Email: gary.d.feldon@usdoj.gov

*Attorneys for Federal Defendants*