BARRY ROSEN
136 S. Clark Dr. #5
Los Angeles, CA 90048
Tel: (323) 653-2043

*LODGED*
*PROPOSED*
*ORDER*

FILED

Plaintiff In Pro Per

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ROSEN, Individually and as a Private Attorney General<br><br>   Petitioner and Plaintiff,<br><br>     vs.<br><br>UNITED STATES GOVERNMENT, FEDERAL AVIATION ADMINISTRATION, AND CITY OF SANTA MONICA,<br>    Respondents and Defendants. | Case No. 17-CV-07727-PSG-JEMx<br>Honorable Philip S. Gutierrez<br><br>**PLAINTIFF BARRY ROSEN'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**Filed concurrently herewith:**<br> **Declaration of Barry Rosen;**<br> **Request for Judicial Notice,**<br> **Plaintiff's Statement of**<br> **Uncontroverted Facts; (Proposed Order)**<br><br>Hearing Date: July 9, 2016<br>Time: 1:30 PM<br>Courtroom:  6A – West First St Courthouse |

TO THE HONORABLE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that on July 9, 2018 at 1:30pm,

or as soon thereafter as this matter may be heard in the above-entitled Court

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

located at First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565, the plaintiff in this case will move this Court for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-1.

This motion is based on this notice, the memorandum of points and authorities filed herein, the declaration(s) filed by Plaintiff, the exhibits filed herein, the statement of uncontroverted facts and conclusions of law, Plaintiff's Third Amended Petition for Writ of Mandate and Complaint for Declaratory Relief, along with the other pleadings previously filed in this action, and any oral argument permitted at the hearing on this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 16, 2018 (Declaration of Barry Rosen ¶ 2).

Dated: May 21, 2018

By: _____
Barry Rosen, In Propria Persona
Plaintiff

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES**...................................... 6

**I.    INTRODUCTION.** ....................................................................... 6

**II.  STANDARD OF REVIEW.** ......................................................... 8

**III.   FACTUAL AND PROCEDURAL HISTORY** ........................................ 9

**A.    Invalid Contract with Outside Counsel** ...................................... 9

**B.    Santa Monica had absolutely no right to bring an Action pursuant to 28 U.S.C. § 2675, Et Al.**.........................................................10

**C.    The Court Lacked Jurisdiction over CSM's Action** ........................11

**D.    The Decree is Invalid ab initio FAA Overstepped its Authority**........ 13

**E.    Lack of authority for the parties to enter into the Decree** ................14

**F.    Plaintiff's Standing to Bring this Action** ....................................18

**IV.   CONCLUSION**.......................................................................... 19

1

# <u>TABLE OF AUTHORITIES</u>

2

3        **CASES**

4

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).......6

5
*Black Gold Marine, Inc. vs. Jackson Marine Co.* (5th Cir. 1985) 759 F2d 466, 471 ....................................................8

6
*Center for Biological Diversity vs. Kempthorne* (9th Cir. 2009) 588 F.3d 701, 707-708 .........................................16

7
*City of Glendale vs. Trondsen (1957) 48 Cal.2d 93, 98* .............................................................................................14

8
*Davidson vs. Sup. Ct. (City of Mendota)* (1999) 70 Cal.App.4th 514, 528 ................................................................16

9
*Kansas vs. United States* (10th Cir. 2001) 249 F.3d 1213, 1225 ...............................................................................12

10
KRL v. Moore, 384 F. 3d 1105, 1110 (9th Cir. 2004)....................................................................................................7

11
*Lane vs. Pena* (1996) 518 US 187, 190 .........................................................................................................................9

12
*Montara Water and Sanitary Dist. vs. County of San Mateo* (N. D. Cal., 2009) 598 F. Supp.2d 1070, 1076.........5, 12

13
*NRDC, Inc. vs. FAA* (2nd Cir. 2009) 564 F.3d 549, 555 ...........................................................................................17

14
Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989)......................................................................................................7

15
*Wright v. Gregg 685 F.2d 340 (9th Circuit 1982)* .....................................................................................................10

16

17        **STATUTES**

18
28 U.S.C § 2401 ...............................................................................................................................................................9

19
28 U.S.C. § 2675 ..............................................................................................................................................................9

20
28 U.S.C. 2401(b) ..........................................................................................................................................................10

21
28 U.S.C. 2409a(g) ..........................................................................................................................................................9

22
28 U.S.C. 2409a(m) .........................................................................................................................................................9

23
CA Government Code § 54950 et seq .............................................................................................................................7

24
Fed. R. Civ. P. 56.............................................................................................................................................................7

25
Fed. R. Civ. P. 56(a) ........................................................................................................................................................6

26

27        **OTHER AUTHORITIES**

28
§ 2.24.073 of the Municipal Code ..................................................................................................................................8

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

4

1  § 608 of the City Charter ..................................................................................................8

2  2.24.073 of the Municipal Code ......................................................................................8

3  California Government Code Section 54956 ....................................................................13

4  Charter section 613 .........................................................................................................15

5  City Charter section 640 ..................................................................................................14

6  Section 1.04.020 of the Santa Monica Municipal Code ................................................13

7  Section 1.04.020(a) of the Santa Monica Municipal Code ...........................................13

8  Section 1302 of the Santa Monica City Charter ............................................................15

9  Section 613 of Santa Monica City Charter ....................................................................13

10

11                                    **RULES**

12  Local Rule 7-3.................................................................................................................8

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION.

This action seeks in part to invalidate the 2017 Settlement Agreement / Consent Decree ("Decree") by and between the Federal Aviation Administration ("FAA") and City of Santa Monica ("City") related to the Santa Monica Airport; plaintiff alleges in his verified third amended petition for writ of mandate and complaint for declaratory relief that the Decree lacks any force at law, was entered into under invalid authority by the FAA and City and is invalid and void *ab initio*, due to numerous violations of various discretionary as well as ministerial obligations on the part of the FAA and City (collectively the "Defendants"); further the Decree was entered into, at a time when the federal executive branch was in transition and the signatory parties lacked authority from their governing respective bodies; in addition, the two public bodies, a federal agency and a municipality demonstrated a complete lack of public transparency that is not only expected but is demanded of them under the law.

In an attempt to be sneaky, the persons who where the signatories on the Decree for both the FAA and the City lacked any legal authority to do so and thus the Decree and actions taken pursuant to the Decree are invalid and void *ab initio* as further described herein.

Next, the City first violated the public trust when it improperly hired outside attorney's in violation of its own City Charter and related Municipal Code(s) to bring a lawsuit and then improperly filed the lawsuit (13-CV-08046-JFW-VBKx) without first having filed an administrative claim with the United States Government (or the proper agency thereof) and waiting six months pursuant to 28 U.S.C. § 2675 of the Federal Tort Claims Act ("FTCA") et al. As a result the City

was forever precluded from bringing and action pursuant to 28 U.S.C § 2401 and thus the court lacked jurisdiction over the matter due to the failure to present such a claim and would have been obligated to dismiss.  But for the fact that the court was never presented with the appropriate facts due the negligence of the US Attorney handling the case, and illegal Decree was entered into by the Defendants, forcing Plaintiff to now seek to rectify the situation as and affected and beneficial party.

As is abundantly clear in this motion, the FAA clearly lacked and overstepped its authority in entering into the Decree as no executive non-attorney signatory authorized execution; further the FAA lacked any authorization from the Secretary of the FAA pursuant to any provision of the United States Code ("USC"). Moreover as noted in *Montara Water and Sanitary Dist. vs. County of San Mateo* (N. D. Cal., 2009) 598 F. Supp.2d 1070, 1076, the FAA lacked the authority to fully release the airport from the 1948 Instrument of Transfer, as such relief could only be granted by an act of Congress—such an act has never been authorized due to the shortage of airports such as the Santa Monica Airport.

Finally, Plaintiff further seeks to invalidate the Decree due to the fact the City too lacked any signatory authority under its own Charter; further there was improper notice was given to the public of the January 28, 2016 City Council meeting, precluding the public from being availed due process; in addition, the members allegedly at the closed session meeting, including the Mayor "Ted" Winterer, were precluded from authorizing the City Manager to sign the Decree in a closed session; the action approving the Decree required an open session action and vote to approve the Decree under its own Charter section as well as a vote to override and confirm Mayor Winterer's conflict of interest; the City's own Charter required compliance with the City's Charter section 640 which would prohibit a closed session action to approve the Decree; in addition, both the California

Political Reform Act and more stringent provisions under Section 1302 of the Santa Monica City Charter require Mayor Winterer to recuse himself in open session and the City Council vote, without the recused Mayor, to approve the Decree by resolution and authorize the City Manager to sign the Decree; Charter section 704 prohibits the City Manager to sign the Decree as the power was expressly reserved by the City Council under Charter section 640—there was no resolution adopted in open session, or otherwise, demonstrating the City Council conformed with Charter section 640 and authorized the City Manager.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing there is no genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. See id.; Taylor v. List, 880 F. 2d 1040, 1045 (9th Cir. 1989). The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's assertion of fact as required by Rule 56(c). See Fed. R. Civ. P. 56(e).

The responding party cannot point to mere allegations or denials contained in the pleadings. It is not enough for the non-moving party to produce a mere "scintilla" of evidence. Celotex Corp., at 252. Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the

existence of an actual issue for trial. See KRL v. Moore, 384 F. 3d 1105, 1110 (9th Cir. 2004).

## III.   FACTUAL AND PROCEDURAL HISTORY

### A.   Invalid Contract with Outside Counsel

In the fall of 2013, the Santa Monica City Attorney, Marsha Moutrie hired an outside law firm (Morrison & Foerster) to bring a lawsuit against the FAA on behalf of the City of Santa Monica. Pursuant to § 608 of the City Charter and § 2.24.073 of the Municipal Code, the City Attorney had to meet certain obligations in order to hire outside counsel, including but not limited to conducting a competitive search process via requests for proposals ("RFP") or otherwise by the express approval of the City Council (TAC ¶30, RFJN 1).

Plaintiff sought to obtain records pursuant to the California Public records Act (CA Government Code § 54950 et seq) to see if the City Attorney had met the obligations for hiring outside counsel Pursuant to § 608 of the City Charter and § 2.24.073 of the Municipal Code. No documents whatsoever were produced to demonstrate that the City Attorney had complied with all obligations required for hiring outside counsel or that the City Council had approved such a contract. Plaintiff has also done a search of the service (PlanetBids) the City uses to for the dissemination of its RFP, but has been unable to find any proof of compliance with 2.24.073 of the Municipal Code (TAC ¶31; Declaration of Barry Rosen ¶¶3-6, Exhibits 1 and 2).

During the 3 meet and confers held pursuant to Local Rule 7-3, Plaintiff has requested that the City provide documents demonstrating compliance, but no such documents were ever produced. Even it's Rule 12 motion filed on April 23, 2018,

the City makes a claim that it "did not improperly hire outside counsel," yet still fails to produce any documents demonstrating compliance with § 608 of the City Charter or § 2.24.073 of the municipal code (Declaration of Barry Rosen ¶¶7-8).

After multiple requests for documents and the City's failure to produce them even in response to litigation, It now is clear to Plaintiff that that the City has no documents that demonstrate that the City Attorney conducted a competitive search pursuant to her obligation under § 2.24.073 of the municipal code, nor sought the express approval of the City Council as required by § 608 of the City Charter. As a result, the City had no authority to contract with Morrison & Foerster and all work product resulting therefrom, including the lawsuit itself (and later appeal) were invalid *ab initio (*Declaration of Barry Rosen ¶9, Dkt 60). It is proper for this Court to declare this contract to resolve this dispute and declare the City's hiring and contractual relationship with Morrison & Foerster invalid, particularly as there are no longer any attorneys at Morrison & Foerster who prosecuted this action. *Black Gold Marine, Inc. vs. Jackson Marine Co.* (5th Cir. 1985) 759 F2d 466, 471.

It is now ***undisputed*** that because the City failed to comply with any of its obligations in contracting with Morrison & Foerster to bring a lawsuit on behalf of the City, the contract should now be struck down by the invalid *ab initio*, along with all work product, including the initial complaint and appeal related thereto due the City's failure to comply with its own City Charter and Municipal Code in contracting with outside counsel.

## B.     Santa Monica had absolutely no right to bring an Action pursuant to 28 U.S.C. § 2675, Et Al.

Prior to bringing the type of Action that was brought, the City was required to file a claim with the "appropriate government agency" and wait six (6) months pursuant to FTCA, 28 U.S.C. § 2675, et al before bringing such an action. Pursuant

to 28 U.S.C. 2409a(m), the City, like the State, would be required to notify the FAA six (6) months prior to filing its suit; 28 U.S.C. 2409a(g), also serves as a bar to the relief sought. Without ever having filed such claims and exhausted administrative remedies, it is well settled in case law that the City was precluded from bringing such a claim pursuant to 28 U.S.C § 2401, pursuant to the doctrine of "sovereign immunity". There must be an unequivocal expression of elimination of sovereign immunity. *Lane vs. Pena* (1996) 518 US 187, 190.

As discussed above, such an administrative claim under both 28 U.S.C. §§ 2675(a) and 2409a(m), would need to have been filed with the appropriate agency/agencies.  In this instance, the appropriate agency at a minimum was the GSA (successor to the War Assets Administration).

It is **undisputed** that the City never filed such an administrative claim (or claims) under 28 U.S.C. § 2675, 2409a(m), et al, prior to bringing the Action at issue and was therefore precluded from bringing such an Action (Declaration of Barry Rosen ¶11, RFJN 5).  Absence of such and administrative claim divests both the FAA and City from the force of law sought under the Decree; in other words, the Court, FAA, and City had no authority without the claim filing *a priori*.

Plaintiff is informed and believes that the Action should now be struck down as invalid *ab initio* due the CSM's failure file an administrative claim with the appropriate agency (or agencies) and/or exhaust all administrative options prior to commencing the Action.

### C.    The Court Lacked Jurisdiction over CSM's Action

The requirement that a claim be asserted administratively (28 U.S.C. § 2675, 28 U.S.C. § 2409a(m)) is jurisdictional and must be properly framed in the complaint (Rule 8(a), F.R.C.P.). It should allege that an administrative claim was asserted and was either denied or that after a period of 6 months the agency

concerned failed to make final disposition of the claim. Without such proper framing and allegation, the Court fully lacks jurisdiction over the action see *Wright v. Gregg 685 F.2d 340 (9th Circuit 1982).*

It is ***undisputed*** that the City of Santa Monica failed to allege in its complaint that an administrative claim was asserted, because it never filed such a claim. As a result, the court fully lacked jurisdiction over the Action (Declaration of Barry Rosen ¶¶10-11, RFJN 5).

Where the facts disclose that an administrative claim has not been filed or finally acted upon, the U.S. Attorney has an obligation to advise the plaintiff's counsel, in writing, of the jurisdictional defect in the action, request that the plaintiff take a voluntary nonsuit, and advise that unless this is done within 10 days, the United States will be obliged to move to dismiss the action for failure to pursue and exhaust the administrative remedy. This also give rise to a question as to the application of the statute of limitations in 28 U.S.C. 2401(b).

But for the negligence of the U.S. Attorney handling the matter, neither the City nor the Court were advised of the jurisdictional defect in the Action.  Had the Court been properly afforded the opportunity to have knowledge of the jurisdictional defect, it would have dismissed the action for failure to pursue and exhaust the administrative remedy pursuant to the City's obligation to do so (Declaration of Barry Rosen ¶13).

Plaintiff is informed and believes that the Action should now be struck down as invalid *ab initio* due to both the City's failure file an administrative claim with the appropriate agency (or agencies) and/or exhaust all administrative options prior to commencing the Action and the failure U.S. Attorney to properly perform his duties.  Approval of the Decree does not resolve the sovereign immunity problem in light of *Lane vs. Pena (1996) 518 US 187, 190.*

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**D.    The Decree is Invalid ab initio because FAA Overstepped its Authority**

As discussed above, the 1948 Instrument of Transfer (RFJN 6) demonstrates that the contract was between the City of Santa Monica and the War Assets Administration (the successor of which is the General Services Administration) and not with the FAA and that the full relief sought under 13-CV-08046-JFW-VBKx could never has been granted the FAA as it would actually take an act of congress to fully release the airport from obligations under the 1948 instrument of transfer pursuant to the War Surplus Act of 1944, et al.

In a case involving the Half Moon Bay Airport, the Federal government successfully asserted its interest against a water district and set out relevant precedent as they too had roughly similar covenants as before the Court; furthermore and in line with that case, the City's attempt to quiet the Federal government's interest in the Santa Monica Airport may not even squarely fit inside the quiet title act as the City and FAA had a dispute on the status of the airport and not title per se. *Montara Water and Sanitary Dist. vs. County of San Mateo* (N. D. Cal., 2009) 598 F. Supp.2d 1070, 1076 citing *Kansas vs. United States* (10th Cir. 2001) 249 F.3d 1213, 1225 (disputes concerning the status are not title disputes).

It is abundantly clear that the FAA **does not** have any authority to allow closure of an airport as was improperly agreed to in the Decree. As illustrated in *Montara*, it was the intent of Congress that airports subject to War Surplus Act instruments of transfer (like Santa Monica Airport) were to be operated as an airport in perpetuity. Only pursuant to an act of the US Congress would there be any authority to fully release Santa Monica from obligations under the 1948 Instrument of Transfer that the Airport be operated as an airport in perpetuity. As Congress has never taken such action, no authority exists/existed that would allow for a release of such obligations (i.e. allow for closure of the airport).

It is also very clear that under 1948 Instrument of Transfer, in order to effect any release of lands at all, a payment ***shall*** be made to the War Assets Administration or successor thereto for the removal of such restrictions (RFJN 6, paragraph numbered as 6). It is also clear that no such payments or any consideration thereof (or waiver thereof) was included in the Decree and therefore without such provisions for payment, etc. to the General Services Administration, the any release of lands are fully invalid (RFJN 12). Moreover, it is clear that the GSA did not sign off on the agreement, nor did the administrator of the FAA, who was sued in his official capacity (RFJN 12).

Plaintiff believes because FAA is not a party to the 1948 Instrument of Transfer and because the FAA overstepped its authority in releasing the entire Airport and its lands from the 1948 Instrument of Transfer, when it clearly had no right to do so, the entire Decree should now be struck down as invalid.

### E.    Lack of authority for the parties to enter into the Decree

### 1. Issues related to the City of Santa Monica

The City of Santa Monica first and foremost lacked authority to approve of the settlement agreement/consent decree at the January 28, 2017 City Council meeting due in part to the fact that improper notice of the meeting was purportedly given to the general public. According the agenda for January 28, 2017 (RFJN Ex 8), the City Council the meeting was listed as being held at 1855 Main St, East Wing on Saturday January 28, 2017, yet the minutes of that meeting (RFJN 8), reflect that it was held in the City Council Chambers at 1685 Main St. Because the meeting was apparently moved and the public was given the wrong information about the location of the meeting, the meeting should not and could not have been held on January 28, 2017 due to lack of compliance with numerous obligations pursuant to Section 613 of Santa Monica City Charter and Section 1.04.020 of the

Santa Monica Municipal Code and California Government Code Section 54956 (RFJN 9 & 10).

The possibility exists that the meeting location was changed due to the fact that the location had not been previously designated by the City Council as a meeting location by ordinance or resolution pursuant to Section 613 of Santa Monica City Charter, but the probability exists that the council deliberately wanted to keep the meeting from the public. Regardless, under such circumstances, the meeting was wholly improper, as a new updated agenda would have needed to be generated reflecting the new location for the meeting. Notice would then have needed to have been given to the public at least 24 hours prior to the meeting pursuant to Section 1.04.020(a) of the Santa Monica Municipal Code and notice given to the City Council members as well pursuant to Section 1.04.020(b) of the Santa Monica Municipal Code and California Government Code Section 54956. As such notice was clearly never given, the January 28, 2017 City Council meeting should never have been held and any actions taken at that meeting are therefore invalid.

Even if the meeting was somehow appropriately held (which it is not)  nder the counter-initiative the City filed in 2014 against pilots of the Santa Monica Airport, the City Council itself reserved all authority to regulate, manage, and permanently close all or part of the Santa Monica Airport. This initiative was codified as City Charter section 640 (RFJN 11). When Rick Cole as City Manager signed the Decree (RFJN 12), there was no resolution or ordinance of the City Council authorizing the Settlement/Decree (RFJN 8), let alone authorizing City Manager to act on behalf of the City Council, furthermore, Charter section 640 states "City Council" not the "City Manager" and the oral report out of a closed session by the City Attorney had no force to abrogate Charter section 640. The

Charter acts as an instrument of limitation on the broad power of the charter cities over matters of municipal affairs. *City of Glendale vs. Trondsen (1957) 48 Cal.2d 93, 98*. The City Manager's authorization never existed under Charter section 640 and the City Manager power to sign the Decree was never granted by the City Council by resolution, or otherwise.

The Decree never actually appeared as an agendized item for public scrutiny before the City Council approved and before the City Manager signed it demonstrating a lack of a formal City Council action, resolution, or ordnance empowering the City Manager to act on behalf of the City Council or the City (RFJN 7 & 8).

Lastly, the members allegedly at the closed session meeting, included the Mayor "Ted" Winterer (RFJN 8), who was precluded from authorizing the City Manager to sign the Decree in a closed session as he has/had a conflict of interest due to the fact that it is ***undisputed*** that he lives under the flight path for Runway 21 and would benefit financially and otherwise from the closure of the airport (TAC ¶¶ 98-101; Declaration of Barry Rosen ¶14, Exhibits 3 and 4). The action approving the Decree also required an open session action and vote to approve the Decree under the City's own Charter section 613, as well as a vote was needed to override and/or confirm Mayor Winterer's (financial) conflict of interest.

The City's own Charter required compliance with the City's Charter section 640 which would prohibit a closed session action to approve the Decree. In addition, both the California Political Reform Act and the more stringent provisions under Section 1302 of the Santa Monica City Charter (RFJN 13) required Mayor Winterer to recuse himself in open session and the City Council vote, without the recused Mayor, to approve the Decree by resolution and authorize the City Manager to sign the Decree, the City Manager was expressly

prohibited under Charter section 704 (RFJN 14) from signing the Decree as the power was expressly reserved by the City Council under Charter section 640. As it is ***undisputed*** that here was no resolution adopted in open session, or otherwise, demonstrating the City Council conformed with Charter section 640, the City Manager was not authorized to sign the Decree.

### 2. Issues related to the FAA

Under Section VIII, Paragraph D of the Decree, the representatives of the FAA and City certify they are authorized to enter into the Decree, also referenced as a settlement agreement concerning the disposition, status, and closure of the Santa Monica Airport. However, the signatories Reginald C. Govan, as Chief Counsel of the FAA and Gary D. Feldon, as US Attorney did not have the conferred authority to accomplish the feats attempted in the Decree (TAC ¶¶79-80, RFJN 12).

As the Decree is a contract performed wholly in California, under California law, and specifically, *Davidson vs. Sup. Ct. (City of Mendota)* (1999) 70 Cal.App.4th 514, 528, a settlement agreement was held unenforceable because it was based on stipulated settlement signed only by attorneys. Here, neither Reginald C. Govan is not the authorized executive officer signatory of the FAA or the appropriate executive officer or administrator of the FAA; Mr. Govan is a lawyer signing the equivalent of a settlement agreement, he is Chief Counsel; Gary D. Feldon is a US Attorney (TAC ¶¶79-80, RFJN 12). Therefore, under California law, the signatures of Messrs. Govan and Feldon did not bind the FAA. *Davidson vs. Sup. Ct. (City of Mendota) (1999) 70 Cal.App.4th 514, 528.* Furthermore, it is clear that and essential party, namely the administrator of the FAA, who was named/sued in his official capacity, did not sign off on the Decree (RFJN 12). The

signatories executing the Decree on behalf of the FAA did not have authority to bind the FAA or the City, thus further rendering the Decree void *ab initio*.

Plaintiff believes that the Decree should be held invalid and unenforceable as the signatories placing their signatures on behalf of the FAA and City did not possess the authority to bind the FAA and City to the Decree and their signatures and the Decree should now be struck down for failure to comply with the appropriate California law and Santa Monica Charter.

### F.    Plaintiff's Standing to Bring this Action

Plaintiff brought this Action on his own behalf, as an affected party and as a Private Attorney General on behalf of others similarly situated due to numerous violations of various ministerial obligations on the part of both Defendants and a complete lack of public transparency (Declaration of Barry Rosen ¶¶15-17).

As a further showing of Standing, in *Center for Biological Diversity vs. Kempthorne* (9th Cir. 2009) 588 F.3d 701, 707-708, organizations devoted to protecting the habitat of protected species had standing to challenge regulations authorizing a take of polar bears and walrus under letters of authorization to be applied for by individual oil and gas operators. Mere viewing of the animals in affected areas and plans to return was sufficient standing. In addition, standing was sufficient by private pilot users just by mere usage of an airport in *NRDC, Inc. vs. FAA* (2nd Cir. 2009) 564 F.3d 549, 555. Here Plaintiff is a commercial pilot who regularly uses Santa Monica Airport and has been damaged by Defendants actions (Declaration of Barry Rosen ¶¶16-17). Also, as in the Center for Biological Diversity as well as the NRDC actions, the relief Plaintiff seeks is corresponding and would in fact remedy the alleged harm.

## IV.   CONCLUSION

Because the undisputed facts establish that neither the City of Santa Monica, nor the FAA complied with their legal obligations and that the Action and Decree resulting therefrom, this Court should grant Rosen's motion and enter an order adjudicating such liability and striking the 2017 Settlement Agreement/Consent Decree between the City of Santa Monica and FAA.

Dated: May 21, 2018

By: _____
Barry Rosen, In Propria Persona

# PROOF OF SERVICE BY MAIL

**Case No. 17-CV-07727-PSG-JEMx**

On May 21, 2018, I served the documents described as:

1.     Plaintiffs Notice of Motion and Motion for Partial Summary Judgment

2.     Declaration of Plaintiff ISO Motion for Partial Summary Judgement

3.     Plaintiff's Request for Judical notice ISO Motion

4.     Plaintiff's Statement of Uncontroverted Facts

5.     (Proposed) Order granting Motion

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in the United States mail at or in Los Angeles, California,

Addressed to:

Ivan Campbell

Santa Monica City Attorney

1685 Main Street, Third Floor

Santa Monica, California 90401-3295

Gary Feldon

US, DOJ

Civil Division, Federal Program Branch

200 Massachusetts Avenue NW

Washington, D.C. 20530

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 21, 2018 at Los Angeles, California.

By: _____

Arthur Ruben